## Bryant v. Green.

(Decided December 2, 1921.)

### Appeal from Laurel Circuit Court.

1. Vendor and Purchaser—Rescission—Warranty.—In the absence of fraud or insolvency or nonresidence of the vendor a vendee in the peaceable possession of the granted premises by virtue of a conveyance containing a covenant of general warranty is not entitled to a rescission of the contract when sued for the purchase money, although the vendor at the time of the sale may have represented his title as perfect when in fact it was not. In such a case the vendee must pay the money and rely upon the covenant of warranty in case of an eviction.

2. Vendor and Purchaser—Avoidance of Deed.—The vendee while in peaceable possession under his deed of general warranty procured a quit claim deed to the land from the holders of the bare legal title who recognized the vendor's equitable title, cannot use same to avoid his deed or defeat a recovery on his purchase money notes to his vendor.

3.   Deeds—When Representation in, Though Untrue, Not Fraudulent.
—A recitation in the deed that the land conveyed was a part of
a tract to which the vendor had perfect title, though untrue, was
not a fraudulent representation that vitiates the deed, when in-
serted simply to comply with our statute of recordation after the
trade had been agreed upon and without purpose to deceive, and
where it does not affect the identity of land actually sold and
intended to be conveyed.

4.   Vendor and Purchaser—Deficiency in Quantity of Land.—The ven-
dee did not manifest a right to recover for a deficiency in the
quantity of the land by proving simply a mistake in copying the
calls from the description in the deed to the vendor, which the ven-
dor upon discovery offered to correct, and without proof that the
corrected deed did not cover the land intended to be conveyed and
contain the full acreage.

GEO. G. BROCK and H. C. CLAY for appellant.

HAZELWOOD & JOHNSON for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

On March 5, 1918, the appellant sold and conveyed by
deed of general warranty to appellee a described tract of
land stated to contain 88½ acres in consideration of
$400.00, of which $150.00 was paid cash in hand.  For the
remainder of the purchase money appellee executed and
delivered to appellant two notes for $125.00 each, due in
two and four months, and to secure their payment a lien
was retained in the deed.  Appellee took possession of
the land under the deed, which he promptly placed to
record.

No part of either of the purchase money notes having
been paid, appellant instituted this action against appel-
lee after the last one became due to recover judgment for
the amount thereof, with interest and costs, and to enforce
the lien retained in the deed.  Appellee filed answer and
counterclaim denying liability on his notes and asking
that they and appellant's deed to him be cancelled, and
that he recover of appellant the $150.00 paid him on the
land.  The grounds asserted for this relief are in sub-
stance that appellant falsely and fraudulently represented
to him that he had good and perfect title to the land and
was seized of the same in fee simple, when in fact he
had no title thereto; that the misrepresentations were
knowingly made by appellant and relied upon by appellee;
that the land was the property of Giles Whitaker's heirs
in part and that Jarvis and Mayme Jackson owned the
remainder.

Appellant by responsive pleading denied all of these allegations and by amended petition made the heirs of Whitaker and the Jacksons parties and called upon them to assert their claims, if any they had. The Jacksons answered disclaiming any interest in the land. By further amended answer and counterclaim appellee alleged a shortage of about sixty per cent in the acreage and sought recoupment therefor, including $44.25 he alleged he had paid to the Jacksons for a quit claim deed to the same land, in the event he was not granted cancellation and restitution.

An amended reply traversing these allegations completed the issues and upon a submission the chancellor cancelled appellee's notes and the deed and gave judgment against appellant for the $150.00 with interest and costs, and ordered the land sold to satisfy same; and it is to reverse this judgment that this appeal has been prosecuted.

Before considering the evidence in which, though voluminous, there is but little conflict, we will dispose of the diverse contentions as to the applicable law.

For appellant it is insisted that in the absence of fraud or insolvency or nonresidence of the vendor, a vendee in the peaceable possession of the granted premises by virtue of a conveyance containing a covenant of general warranty is not entitled to a rescission of the contract when sued for the purchase money although the vendor at the time of the sale may have represented his title as perfect when in fact it was not; and that in such a case the vendee must pay the money and rely upon the covenant of warranty in case of an eviction. This rule of law is stated in almost these exact words upon authority of many cases there cited, in English v. Thomasson, 82 Ky. 280, 6 R. 267, and the following cases, among many others, are to the same effect: Vance v. House's Heirs, 5 B. Mon. 537; Buford's Admr. v. Guthrie, 77 Ky. 690; Knight's Admr. v. Schroader, 148 Ky. 610, 147 S. W. 378; Ison v. Sanders, 163 Ky. 605, 174 S. W. 505; Vaughn v. Wells, 180 Ky. 485, 203 S. W. 191; Sellards v. Adams, 190 Ky. 723. These cases and others cited in them supporting this principle of law range from among the earliest to nearly the latest of the reported cases from this court, and we have been unable to find any local case that questions the soundness of the above statement of the law. All of the Kentucky cases cited and relied upon by appellee will be found upon examination to have granted the vendee relief against his purchase money notes before

eviction upon some one of the grounds enumerated above, viz.: fraud, insolvency or nonresidency of the vendor, except American Assn. v. Short, 97 Ky. 502, 30 S. W. 978, where the rule was recognized and relief granted because of peculiar provisions of the deed as to payments, and two cases not officially reported, Wilson v. Suggett's Exors., 10 Ky. Law Rep. 731, and Paynter v. Ballenger, 2 Ky. Opns. 228, in neither of which does it appear that there was any covenant of warranty and neither contains any reference to the above rule.

The first of the last two opinions begins with the statement that "This record presents a confused state of case. So much so that it is difficult, if not impossible, to arrive at a conclusion altogether satisfactory as to the rights of the parties," and without citation of authority, upon the evidence sustains the judgment of the chancellor allowing the vendee a rebate on the purchase price, but refusing a cancellation and recovery of the amount paid the vendor. The other of these opinions, but a brief memorandum, does not even disclose whether or not any deed or even a title bond had been executed.

It is therefore clear that the law as above stated must be applied to the pleadings and facts of this case in so far as a cancellation and judgment against appellant for the $150.00 are concerned. It is not alleged that appellant is insolvent or a nonresident, and since appellee had not been evicted the only basis for this relief is fraud, and even this appellant insists is not sufficiently alleged, but in this we think he is mistaken. There is, however, no evidence whatever of actual fraud and besides appellant has offered to do everything he could to correct any mistake, and these offers have been refused by the appellee.

When appellee first complained of the title appellant offered to return his notes and the $150.00 if appellee would reconvey the land to him, and when appellant later complained that his deed did not cover all of the land sold to him, appellee and his wife executed and offered to deliver to appellee a new deed covering the land, it having developed that some of the calls had been inadvertently omitted from the first deed, which was prepared by appellant as appellee read him the calls from appellant's deed from one Williams for this identical tract.

Appellant testifies that he explained fully the condition of the title, which he then and now believed to be good and sufficient, while appellee testifies that the only representation made by appellant leading up to the trade

was: "He said he was able to make me a warranty title." Asked, "Is that all he said about it?" he answered, "That is all that he said to me about title. Well, he said further that his father had deeded to him all the land he owned on Sinking creek and he was able to make me a good title." Appellant's father had conveyed to him all the land he owned on this creek, about 400 acres, except the land involved, and this he had deeded to one, Williams, who later deeded it to appellant, and both of these deeds contained covenants of general warranty, and of these transactions appellee knew, as is clearly shown. There is, therefore, absolutely no evidence of fraudulent representations unless it be found in appellant's statement that he was able to make a warranty title. The only alleged flaw in his title is due to the fact that his father, F. F. Bryant, had no deed to the land, but it is conclusively established by competent proof that he did have a title bond therefor from the legal owner, Jarvis Jackson, Sr., executed in 1872, 3 or 4, and that though not residing upon the land covered by the title bond, but upon an adjoining tract known as the Coleman tract, he alone claimed and exercised undisputed and complete control of it to a marked boundary for about fifty years, and that to this day no one else has ever claimed to own it except F. F. Bryant and his vendees, until after appellee purchased and got possession of it from appellant he procured a grandson and granddaughter of Jarvis Jackson to execute to him a quit claim deed to it for $44.25.

This grandson of Jarvis Jackson not only filed his answer herein disclaiming any interest in the land but testified that he had never claimed to own it although covered by his grandfather's title papers; that his grandfather died four or five years before his father, who died in 1889, and that he and his sister had inherited through their father all that their grandfather, Jarvis Jackson, owned at his death. He further testified that while he did not know that his grandfather had executed a title bond to F. F. Bryant, his mother, as administratrix of his father, had in 1889 a map made of all the lands inherited and owned by his father as only heir of Jarvis Jackson in this neighborhood and that this 400 acre tract was designated as tract No. 73 and endorsed "Jarvis Jackson to F. F. Bryant" on that map covering about 44,000 acres and containing about 200 tracts, many of which had been sold by title bond, and that "I have seen it there, yes, sir. I heard it was a bond given to Bryant

and that they had it in possession and we couldn't get a chance to sue on it." That neither the Jacksons nor any one else except F. F. Bryant and his vendees had ever made any claim to this land since F. F. Bryant claimed to have bought it of Jarvis Jackson is thoroughly established, in fact not denied; nor does appellee even claim that any one ever attempted or even threatened to oust him of the title and possession he acquired from appellant. It is, therefore, perfectly clear that his main if not his sole purpose in procuring the quit claim deed from the Jacksons, who confessedly held the bare legal title to the land, was to use it to avoid payment of his notes to appellant, at the same time holding on to the possession he acquired under the deed from appellant; and the result of the judgment of the chancellor is to leave him in possession of the land without cost and of the legal title as well, for which he paid only $44.25 to the holders of the bare legal title who did not claim any beneficial interest in the land. A more inequitable result to appellant, who has acted in perfect good faith throughout, could not be imagined.

The quit claim deed procured from the Jacksons under such circumstances cannot, under the authorities cited above, give to appellee any standing in equity or at law against appellant; and regardless of whether the deed conveyed a perfect title or not the judgment must be reversed, unless because of the fact that the deed recites that the land conveyed is a part of the Coleman tract to which appellee had a perfect record title when it was not a part of that tract but lies wholly within the Jarvis Jackson land, to which appellant did not have a perfect record title because, as explained above, his father did not have a deed to it from Jackson.

But, as the evidence shows, this was not a consideration in the trade but was inserted in the deed simply to comply with our statute that a deed to be recordable must contain a statement of the source of grantor's title, as was understood by the parties. Appellee admits he purchased the tract of land known to him by its marked boundaries on the ground and that appellant's only representation was that he could make him a "warranty title." The evidence shows that the Coleman tract lies wholly within the lands covered by the title bond from Jackson to F. F. Bryant; that it had never been surveyed until after this suit was filed, and no one knew until then whether it covered the land involved or not, and there

is no evidence that the statement with reference to the Coleman deed was inserted for a fraudulent purpose or that appellee was deceived thereby, and it does not in any way affect the identity of the land appellee thought he was buying. We are, therefore, of the opinion this matter cannot affect this branch of the case.

Nor can it affect the other branch of the case with reference to the amount, if anything, appellee was entitled to recover for the alleged shortage in the acreage, to which we will now address our attention. The proof shows that the description in the deed to appellee does not disclose or describe one continuous boundary or cover all of the land appellant sold and intended to convey to appellee. The fifth line crosses the first line, which is correctly described, as does the seventh line, and, surveyed according to its calls, the deed covers only about thirty-five acres of the 88½ acres intended to be conveyed and that the parties, who in conjunction prepared it, believed it covered. Appellant confesses the mistake which, according to his testimony, resulted from incorrectly copying the calls from his deed from Williams and which he offered to correct.

There is no evidence that the boundary sold and that the parties thought was being conveyed does not contain the 88½ acres, and upon the evidence in this case appellee did not manifest a right to recover for a shortage in acreage but simply that his deed, due to a mutual mistake, did not cover all of the land he bought.

That he was entitled upon the evidence to have his deed corrected and no more is manifest, and although he did not ask it specifically he prayed generally for all equitable relief to which he was entitled; and although he did not accept the corrected deed which appellant offered him, as this offer was not made formally or by pleading, the chancellor in an equitable adjustment of the whole matter should have required appellant to deliver and appellee to accept a deed correctly describing the true boundary meant to be conveyed and about which there is no dispute, and appellant should then have been granted the relief sought in his original petition, including costs, and appellee's counterclaim as amended should have been dismissed.

Wherefore the judgment is reversed with directions to enter a judgment in conformity herewith.