## Electric Loose Leaf Floor, et al. v. Electric Planing Mill Company, et al.

(Decided December 15, 1922.)

### Appeal from Daviess Circuit Court.

1. Reformation of Instruments—Mistake or Fraud.—A party to a contract is not entitled to a reformation of the instrument unless the contract, through mutual mistake or fraud, fails to express the agreement made between the parties; and relief will only be granted upon the establishment of the mistake or fraud by evidence of the most clear and convincing character.

2. Corporations—Authority of Agent to Act.—A corporation can only act through its officers and agents, and before such corporation can be found by a contract made by its officer or agents it must have empowered or authorized its officer or agent to act for it in making such contract.

3. Appeal and Error—Finding of Chancellor.—The finding of fact by a chancellor will not be disturbed by this court unless it be against the weight of the evidence.

BEN D. RINGO, T. F BIRKHEAD and LAVEGA CLEMENTS for appellants.

J. R. HAYS for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

Both the Electric Loose Leaf Floor and the Electric Planing Mill Company are corporations, organized under the laws of this state, and authorized to sue and to be sued. The Planing Mill Company in 1917 owned a planing mill plant and another large building about 150 feet by 250 feet, which latter building it contemplated converting into a tobacco warehouse. That company was owned by three stockholders: I. H. Robertson, H. N. Robertson and Miss Agnes Webb, and these persons were all directors and officers of the corporation. The Electric Loose Leaf Floor corporation was organized by four persons, the two said Robertsons who were stockholders in the Planing Mill Company, and W. G. Riney and S. Weikel, and they were each stockholders, directors and officers of the said last named corporation. In September, 1917, the two corporations entered into a written contract whereby the tobacco company leased from the planing mill company the big warehouse to be used as a market place for tobacco belonging to farmers. The contract reads as follows:

"This contract made and entered into by and between Electric Planing Mill Company, Owensboro, Kentucky, party of the first part, and Electric Loose Leaf Floor, Owensboro, Kentucky, party of the second part,

"WITNESSETH: That the said party of the first part has agreed to furnish and lease, properly equipped to the party of the second part, its building situated on the north side of West Ninth street between Walnut and Poplar streets in Owensboro, Daviess county, Kentucky, for a period *of six months,* from December 1, 1917, at a rental of two thousand dollars ($2,000.00), said building being 150 ft. by 250 feet and is to be completed and ready for use as a 'Loose Leaf Floor and Warehouse' for the sale of tobacco belonging to farmers; said rental is to be paid in advance on December 1, 1917, and said building is to have the necessary scales, trucks, baskets,

hooks and office room and the said party of the second part agrees to pay said rental; to take reasonably good care of said building and its equipments and to repair any damage done by it to said building except usual wear and tear while occupying same for said business aforesaid.

"In Testimony Whereof, witness the signatures of the first part and second party by its presidents and general managers, this the 26th day of September, 1917.

"W. G. Riney,
        Manager Loose Leaf Floor.
"I. H. Robertson,
        President of Electric Planing Mill
            Company."

It will be observed from reading the foregoing contract that it specifically provides that the lease shall continue for six months from December 1, 1917, to June 1, 1918. This suit was brought by the tobacco company against the planing mill company and the two Robertsons to have a reformation of the contract on the averment "that by mistake, oversight and omission of the draftsman of said contract, it only covered a rental of the building belonging to the defendant Electric Planing Mill Company for the seasons and years 1917, 1918, when in truth and in fact said contract should have recited that said contract also applied and was for the tobacco seasons of 1918-19, and this was left out of said written contract by mistake, oversight and omission of said draftsman of the said contract, and the plaintiff did not discover said omission from said written contract until the spring of 1918."

Appellants in their brief state the following as the sole question in this case: "Do the facts appearing in this record authorize a chancellor to enter a judgment directing that the written contract set out therein be reformed?" And it immediately answers its own question by saying that the facts do justify a court of equity in reforming the contract. While the question is not made, and it is therefore unnecessary to decide, we are very doubtful whether the averments of the petition would authorize a reformation of a written contract, such as the one under consideration and which contract has been executed. We doubt, too, whether appellants had the right to institute and prosecute this action in behalf of the tobacco company without authority so to

do from a majority of the directors or principal officers of said corporation. Passing this question and proceeding to a consideration of the case on its merits, we find great conflict in the testimony.

A great volume of evidence accompanies the record. Several persons, including Riney and Weikel, testifying for appellants, stated in substance that before the making of the written contract above copied, the several stockholders who afterwards organized the tobacco company entered into a partnership agreement whereby they were to lease the same warehouse at the same price and start a tobacco business upon about the same terms as expressed in the foregoing contract, and that at the time of the formation of the partnership, which was before the organization of the corporations, and since such time, the defendant company through its officers and agents agreed with the plaintiff and its officers and agents to lease the said house not only for the tobacco seasons of 1917-18, but also for the season of 1918-19, on the same terms and conditions. In support of this it is shown by some witnesses that the Robertsons, who had charge of the warehouse, had on different occasions stated that they expected the tobacco company to keep the warehouse for the next season. All of which tends to indicate that the written contract did not in fact contain all of the terms of the agreement. On the other hand the contract itself, which is copied above, and the written partnership agreement entered into between W. G. Riney and S. Weikel on the one part and I. H. and H. N. Robertson on the other part, to operate a loose leaf warehouse in the building now in controversy, contradicts in a very substantial way appellants' contention as to the facts. This partnership agreement reads as follows:

"An agreement is hereby entered into between W. G. Riney and S. Weikel, and I. H. and H. N. Robertson, to operate a loose leaf tobacco warehouse in the building of the Electric Planing Mill Co., for which they are to pay a rental of $2,000.00 for six months from December first, rental to be paid on that date.

"It is also agreed that said Riney and Weikel are to have entire charge of the conduct of the business, financing, etc., for which they are each to have a salary of $150.00 per month to be paid out of the business.

"Whatever profits are made after deducting expenses is to be equally divided between W. G. Riney and S. Weikel, and I. H. and H. N. Robertson.

"The warehouse will be named 'Electric Loose Leaf Floor.'

"Witness our hands this day and date.

　　　　　　　　　　　　"W. G. RINEY,
　　　　　　　　　　　　　S. WEIKEL,
　　　　　　　　　　　　　I. H. ROBERTSON,
　　　　　　　　　　　　　H. N. ROBERTSON."

The corporations could only act through their officers and agents, and before the agents could enter into a contract binding upon the corporation it was necessary for the board of directors of said corporations by written order to authorize such agent to make such contract. In attempting to do this the planing mill company, on September 26, 1917, had a meeting of its officers and directors and made the following order or minute on its books, authorizing its president to lease the warehouse to the Electric Tobacco Company for six months. The order reads as follows:

"Owensboro, Ky., September 26, 1917.

"At a meeting of the directors and stockholders of the Electric Planing Mill Company, held at its office No. 723 West Ninth street, Owensboro, Ky., 26th day of September, 1917, all stockholders being present, a motion was made to lease the large warehouse owned by the said Electric Planing Mill Company, located on West Ninth street, Owensboro, Ky., fronting 150' by 200', to the Electric Loose Leaf Floor, a corporation newly organized for the purpose of selling tobacco of the growers at public auction.

"The president of the Electric Planing Mill company is hereby authorized to rent to the Electric Loose Leaf Floor the warehouse owned by it on West Ninth street, 150' x200', for *six months beginning December 1st, 1917,* at a rental of two thousand dollars ($2,000.00) payable December 1st, 1917, said Planing Mill Company to furnish scales, trucks, hooks, baskets and office room.

"There being no further business, on motion of I. H. Robertson, seconded by H. N. Robertson, the meeting was adjourned." Both I. H. Robertson and H. N. Robertson state positively that they did not lease or agree to lease to the tobacco company the warehouse except for

the season between December 1, 1917, and June 1, 1918, and that there was no agreement whatever for the tobacco company to continue business in the said warehouse, and gave as the reason the desire of the planing mill company to sell said warehouse; if it was leased such contract might interfere with a sale. They also state that the contract which appellants seek to have reformed exactly expresses the agreement which the one company made with the other, and that the said contract was read over separately by each of the persons interested in it, by the officers and agents of the two corporations, and was then read to all of said persons by counsel for appellants, who was the draftsman of the paper. There are other facts and circumstances on each side of the case which bear more or less upon the conditions and surroundings which prevailed at the time and place of the making of the contract, and which tend to show the motives and intentions of the contracting parties but which it is unnecessary here to recite.

Our established rule requires a person, who seeks to reform a written contract on the grounds of mistake, to establish in the clearest and most satisfactory manner that the alleged agreement to which he desires it to be made to conform continued concurrently in the minds of all parties down to the time of its execution; and also be able to show exactly and precisely the form to which the contract should be brought. To do this the mistake must be clearly established by the proof, and in no case will a court of equity decree an alteration or reformation in the terms of a duly executed contract unless the proofs are full, clear and decisive. The mistake must not be involved in doubt; if it be so no reformation can be had.

The chancellor below, in whom we repose great confidence, carefully considered the whole record and listened to oral argument. After due and careful consideration he entered a decree dismissing plaintiffs' petition and adjudging appellants take nothing thereby and that appellee Planing Mill Company recover of the tobacco company its costs expended in the case. While we regard the evidence practically as strong on one side as on the other, we do not know the witnesses as did the chancellor who saw and listened to them and whom we presume had personal knowledge of their individual traits and could appraise their veracity and knew upon what testimony to rely. His finding of the facts is entitled to

great weight in a case like this. We are not authorized to disturb his finding unless it be against the weight of the evidence, and this we are not prepared to say under the state of the record.

Judgment affirmed.