### Goatley, et al. v. Harmon, et al.

### Same v. Same.

(Decided February 13, 1923.)

## Appeals from Marion Circuit Court.

1. Vendor and Purchaser—Rescission—Defect of Title—Fraud.—A vendee in the peaceable possession of land, by virtue of a deed containing a covenant of general warranty, is not entitled to a rescission when sued for the purchase money, unless it is made to appear that the grantor is insolvent, or is a non-resident, or was guilty of actual fraud, and a mere mistake, or error of opinion, as to the title is not actual fraud within the meaning of the rule.

2. Judicial Sales—Exceptions—Mere Pendency of Appeal Not Ground for Setting Sale Aside.—Where a judgment of sale is not super-

seded, the mere pendency of an appeal is not ground for setting the sale aside, especially where the judgment is affirmed on appeal.

3.    Judicial Sales—Exceptions—Right of Owner to Complain of Defect of Title.—The owner of land sold to satisfy lien notes cannot complain of the fact that a cloud on the title prevented the land from bringing an adequate price, where the cloud, if any, still exists, and would necessarily have the same effect in case of another sale.

HUGH P. COOPER for appellants.

W. H. SPRAGENS and P. K. McELROY for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming in each case.

In the month of November, 1919, T. J. Harmon sold his farm of 214½ acres in Marion county to G. A. Goatley for the sum of $37,537.50, of which one-third was payable in cash and the balance in four equal annual installments.   The deed and notes, which were signed on November 15, 1919, were held in escrow until January 2, 1920, when the deed was acknowledged and delivered, the cash payment made and the notes turned over to the grantor. · On the same day, Goatley took possession of the farm, and his possession was never disturbed at any time thereafter.   After the sale of the farm, T. J. Harmon purchased a farm from his brother, G. W. Harmon, and as part payment therefor, transferred and endorsed to his brother the four purchase money lien notes executed by Goatley.

On January 13, 1921, Goatley, who had not paid the first note which became due on January 1, 1921, or any interest on any of the notes, sued T. J. and G. W. Harmon for a rescission of the contract on several grounds, none of which are seriously pressed except the claim that the title to a portion of the farm was defective, and T. J. Harmon fraudulently represented that he had a good fee simple title.   On the following day, G. W. Harmon sued Goatley and wife to recover on the notes assigned to him, and to enforce the lien by which they were secured. To this action Goatley filed an answer and counterclaim defending on the same grounds for which he asked a rescission in the action brought by him.   The cases were consolidated and judgment was rendered in favor of G. W. Harmon for the amount of the notes and ordering the land sold.   Thereafter the land was sold and Goatley's exceptions to the sale were overruled, and the sale

confirmed. From the judgment ordering the sale, and from the judgment confirming the sale, these appeals are prosecuted.

It appears that. T. J. Harmon had acquired title to the farm of 214½ acres by three separate deeds, one for nine acres, one for 105½ acres and one for 100 acres. Only the title to the 100 acre tract is called in question. This tract was acquired by deed from Sarah M. Pirtle, widow, and her children, John E. Pirtle and wife, Maggie Harmon and husband, Nannie Lynch and husband, Laura Rogers and husband, and her two grandchildren, Lena Milbourn Gray and Bessie Milbourn Gray, and their husbands. The Pirtles derived title through a deed dated January 1, 1906, from Mrs. Rosa Mackin and others, parties of the first part and "H. S. Pirtle and his wife, Sarah M. Pirtle, and their heirs as hereinafter set out, parties of the second part." The property therein described is conveyed subject to the following conditions:

"An undivided one-half interest in the land hereinafter mentioned is conveyed and sold to the party of the second part, S. H. Pirtle, for and during his natural lifetime with remainder over in fee simple to his heirs at law at his death, an undivided one-half interest in the land herein mentioned is conveyed and sold to the party of the second part, Sarah M. Pirtle, for and during her natural lifetime with remainder over in fee simple to her bodily heirs at her death, to-wit: Such children as she may leave surviving her and the heirs at law of such children as do not survive her including the heirs at law of such children as are now dead."

As S. H. Pirtle is now dead, and the deed to T. J. Harmon was executed by him and all of his heirs who took in case of his death, it is not contended that there is any defect in the title to one-half of the 100 acres. The insistence is that the title to the other half which was conveyed to Mrs. Pirtle for life is defective, because the children and grandchildren of Mrs. Pirtle who executed the deed to T. J. Harmon took only a contingent remainder in the land dependent upon their surviving their mother or grandmother, as the case might be, and their interest would not pass by the deed in case they died leaving children before the death of Mrs. Pirtle. Without deciding the question, let us consider the case in the light of the assumption that the contention is sound.

In the case of English v. Thomasson, 82 Ky. 280, will be found the following discussion of the principles of law applicable to a case of this kind:

"The question presented, therefore, is whether a representation as to the title, made by the vendor to the vendee at the time of the sale, which the former believes to be true, but which is, in fact, untrue, will authorize the rescission of the contract, if it has been executed by the acceptance by the vendee of a recorded conveyance containing a covenant of general warranty as to the title, and where there has been no eviction, and no ground for equitable interference, such as insolvency or non-residence of the grantor, exists.

We think not, and our conclusion renders it unnecessary to consider any other question in the case. We do not mean to give any opinion by what is above stated, or to intimate whether the title of Thomasson was or was not in fact defective; but, admitting for argument sake that it was, yet the defendant is not entitled to the relief asked by him upon the mere ground that this was so, and that the appellee represented differently.

It is insisted by the counsel for the appellant that this is an unsettled question in this state; and that the general rule elsewhere is that the falsity of the representation is sufficient, although innocently made.

A careful review, however, of the authorities has satisfied us that in this state the question is not an open or doubtful one.

It has been repeatedly held by this court that in the absence of fraud or insolvency or non-residence of the vendor, that a vendee in the peaceable possession of the granted premises by virtue of a conveyance containing a covenant of general warranty, is not entitled to a rescission of the contract when sued for the purchase money, although the vendor may, at the time of the sale, have represented his title as perfect, when in fact it was not; and that in such a case the vendee must pay the money, and rely upon the covenant of warranty in case of an eviction. (3 A. K. Marshall, 1173, Miller v. Long; 3 J. J. Marshall, 538, Gayle v. Commonwealth; 5 J. J. Marshall, 96, Campbell v. Wittingham; 1 Dana, 303, Simpson, &c. v. Hawkins, &c.; 2 Dana, 276, Taylor v. Lyon; 2 Duvall, 182, Duvall v. Parker; 4 Bush, 415, Trumbo v. Lockridge; 7 Bush 442, Upshaw, &c. v. Debow.  .  .  .

In this case it is not shown, even inferentially, by the testimony, that the appellee believed his title was defective. He had paid for the land, and held it under a deed from one Henderson; and if he believed that his representation as to the title was true, then there was no actual fraud, as the *malus animus,* essential to it, did not exist.

A mere mistake, or error of opinion, as to the validity of his title would not constitute fraud. The warranty, which the appellant chose to accept, was designed to protect him against such a representation, and is effective for that purpose; and he must await an eviction, if it should ever occur, and then look to his remedy at law upon the covenant in his deed.

The appellant has now been in quiet possession of the property for years under an executed deed, containing a covenant of warranty as to the title. The appellee is neither a non-resident nor insolvent; the appellant is not even threatened with a disturbance of his possession; no fraud was connected with the sale to him, and no covenant of the contract has been broken.

Under such circumstances it would open too wide a door, and be dangerous in principle, if this court should undertake to pass upon any outstanding claims or titles, which the claimants are not even asserting, and grant to the vendee, who is now in repose and even ultimately secure. perhaps, in his purchase, a rescission of the contract.''

It will thus be seen that it has always been the settled rule in this state that a vendee in the peaceable possession of land, by virtue of a deed containing a covenant of general warranty, is not entitled to a rescission when sued for the purchase money, unless it is made to appear that the grantor is insolvent, or a non-resident, or was guilty of actual fraud, and that a mere mistake, or error of opinion, as to the title is not actual fraud within the meaning of the rule.

As T. J. Harmon was neither insolvent nor a non-resident, Goatley's right of rescission depends on whether Harmon was guilty of actual fraud. It is doubtful whether the evidence is sufficient to show that Harmon made any statement either himself, or through his agent, respecting the title, but let us assume that he did state that he had a fee simple title. He had bought and paid for the land in the belief that he had acquired a good title.

Being a mere layman, he was not presumed to know the difference between vested and contingent remainders. He had sufficient confidence in his title to convey the land by a general warranty deed, and we find nothing in the record to justify the conclusion that this statement, if made at all, was made in bad faith, or otherwise than in the honest belief that his title was good. We therefore conclude appellant was not entitled to a rescission of the contract.

The grounds on which appellant excepted to the sale are that an appeal had been prosecuted from the judgment ordering the sale, and that the cloud on the title prevented the land from bringing an adequate price.

As the judgment of sale was not superseded, the mere pendency of the appeal furnished no ground for setting the sale aside especially in view of the fact that the judgment has now been affirmed.

Appellant, who is the owner of the land, cannot complain of the fact that the cloud on the title prevented the land from bringing an adequate price, since the cloud, if there be one, still exists, and would necessarily have the same effect in case of another sale.

The judgment in each case is affirmed.