## Ellis's Administrator, et al. v. Burgess.

(Decided March 27, 1925.)

### Appeal from Mason Circuit Court.

1. Vendor and Purchaser—Defense of Ignorance of Sale of Land Not Open to Grantee who Gave Check for Part of Cash Payment and Joined Husband in Execution of Notes.—In suit to collect unpaid notes for land, and to enforce vendor's lien, defense that wife of grantee did not know of sale of land, and that notes were obtained by fraud was not open to her, in view of fact that she gave check for part cash payment on land, and joined husband in execution of notes for balance of purchase price.

2. Appeal and Error—Finding of Jury on Conflicting Evidence as to Sanity, Approved by Chancellor, Not Disturbed on Appeal.—In action on notes and to foreclose vendor's lien, finding of jury as to sanity of grantee based on conflicting evidence, approved by chancellor, will not be disturbed on appeal.

CHARLES L. DALY and J. P. McCARTNEY for appellants.

SLATTERY & REES for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Sarah E. Burgess owned a 62-acre farm in Mason county, and placed it in the hands of Sherman Arn and T. L. Ewan, real estate agents, to advertise and sell at public auction. The sale took place on October 14, 1919. There was a bid of $227.50 an acre. Then Ras Ellis, son of J. S. Ellis and Mahaley Ellis, bid $230.00 an acre with the understanding that the bid was to be submitted to, and approved by, his father, who was not present, but who had previously looked at the land. On the same day, J. S. Ellis, accompanied by his son, Ras Ellis, and his two brothers-in-law, drove to Maysville to close the contract. A written contract was prepared and signed by J. S. Ellis and Charles Burgess, as agent of his mother, and J. S. Ellis made out his check for $1,449.00, being about 10% of the purchase price. At the same time, J. S. Ellis directed Mr. Arn to make the deed to J. S. Ellis and Mahaley Ellis, his wife, and Arn made a written notation to that effect on the copy of the contract retained by him. Possession of the land was taken for seeding purposes, and on February 28, 1920, Mrs. Burgess executed a deed to J. S. Ellis and Mahaley Ellis. The recited consideration was $14,288.75, of which one-third was paid

in cash and seven notes executed by J. S. Ellis and his wife, Mahaley Ellis, for the balance. The deed was delivered on March 1, 1920, and the transaction was closed in the following way: Mrs. Ellis gave a check for $2,658.88 and J. S. Ellis gave his check for $655.06, the two checks, together with the sum paid on October 14, 1919, making the one-third cash payment due when the deed was delivered. At the same time J. S. Ellis and his wife signed seven notes for $1,360.83 each. After the notes were executed, J. S. Ellis asked the privilege of paying $200.00 more in cash, and the first note was destroyed and another executed for $1,160.83. During the same month, Ras Ellis moved on the land and remained there until March, 1923. The interest due on the seven notes to March 1, 1921, was paid by J. S. Ellis. On March 23, 1922, Mrs. Ellis paid the second year's interest on the seven notes by giving her personal check for $212.00, and her note for $347.55, dated March 1, 1922.

On March 23, 1922, J. S. Ellis was adjudged of unsound mind and taken to the Eastern State Hospital, where he died five days later. His brother-in-law, Charles Brust, qualified as his administrator, and, after proper demand, Mrs. Burgess brought this suit against him and the heirs of J. S. Ellis to collect the unpaid notes and enforce her vendor's lien on the land. The defense was that J. S. Ellis was of unsound mind when the contract of sale was made, and that Mrs. Ellis was not a party to the transaction, had no knowledge of it, and that the notes were obtained by fraud. There was also the claim that the purchase price was far in excess of the real value of the land. A jury to which the issue was submitted found that J. S. Ellis was of sound mind when the contract was made, and on final hearing, judgment was rendered in favor of plaintiff. The defendants appeal.

The defense interposed by Mrs. Ellis cannot be sustained. Of course, one may be made a grantee in a deed without her knowledge or consent, but the circumstances attending and following the execution of the deed in question leave no doubt that Mrs. Ellis was aware of the fact that the deed was executed to her. In the first place, she not only accompanied her husband to Maysville when the transaction was finally closed up, but gave her check for the greater portion of the cash payment, and joined with her husband in the execution of the seven notes for the balance of the purchase price. Not only so, but

she gave her personal check and note for the second year's interest on the notes, and it is hardly probable that she would have done all this without being apprised of the fact that she was one of the grantees in the deed.

On the question, whether J. S. Ellis was of sound mind when he purchased the land, there is a decided conflict in the evidence. While a few of his neighbors say that he was not of sound mind, some of them admit that at times his mind was good, and, though members of his family expressed the opinion that he was not capable of attending to business, their own conduct in dealing with him, and in permitting him to deal with others, tends rather to show the contrary. On the other hand, many disinterested witnesses, who had an opportunity to observe his actions, say that he was fully capable of attending to business, and that they observed nothing unusual or abnormal in his conduct. At most, the case is one where the jury might have decided the question either way, and, its finding having been approved by the chancellor, it will not be disturbed.

Judgment affirmed.