# Sheeran et ux. v. Irvin et ux.

(Decided May 31, 1929.)

ALLEN ·R. KINCHELOE and P. M. BASHAM for appellants.

MOORMAN, WALLS· & BEARD and J. R. LAYMAN for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On November 25, 1927, appellants, Dennie Sheeran and wife, who were defendants below, executed, acknowledged, and delivered a deed to appellees and plaintiffs below, Robert L. Irvin and wife, conveying to them 116 acres of land in Breckinridge county, situated about one mile north of the city of Hardinsburg, Ky. The recited consideration was $6,500, $500 of which was paid at the time, and the balance evidenced by two notes of plaintiffs, one for $4,000, due January 1, 1928, when possession was to be delivered, and the other for $2,000, due twelve months thereafter, with a retained lien on the land to secure both of them.

It was also stipulated therein that: ''It is mutually understood and agreed that the grantee is to make application to the Federal Land Bank of Louisville for a loan of $4,000.00 and if obtained (this) amount is to be paid to Dennie Sheeran and he agrees to release his lien on the land herein conveyed and is to take a second mortgage for the $2,000.00 with the collateral notes attached. The grantor Dennie Sheeran is to pay all taxes for the year 1927 and the grantee is to pay the taxes for 1928. The grantor reserves the wheat and rye now growing on the place and he is to have the right to harvest the same and this reservation applies to straw as well as the grain. Possession is to be given on or before January 1st, 1928.''

The deed was at once filed for record with the county court clerk of the county by plaintiffs, and that officer immediately recorded it. Then plaintiffs began negotiations with the local agent of the Federal Land Bank of Louisville, Ky. (Mr. Glasscock, who was also operating a local fire insurance agency), and they likewise conferred with him about insurance upon some of the buildings located on the land. In due time a local attorney pre-

pared an abstract of the title, which was agreed to be delivered to plaintiffs at the time of the execution of the deed, but which was not then ready. The abstract was sent to the general counsel of the bank of Louisville, from which the expected loan was to be obtained, and on the 14th day of December, 1927, that attorney, or one of his assistants, wrote to Glasscock, the local agent, the objections to certain matters appearing in the abstract, with instructions as to what was necessary to perfect them. Between that time, and up to and including, December 22, 1927, the proof for defendants shows that plaintiffs had become dissatisfied with their bargain, and wanted to be released therefrom, and that they encouraged the legal department of the bank to reject the abstract because of defective title, so as to thereby prevent the obtention of the loan followed by an eventual rescission. Defendants deny any such efforts on their part, but there is most convincing proof that they did so. At any rate, no efforts were made by plaintiffs to procure the perfecting of the title and the defects in the abstract submitted to the bank, but defendants did make such efforts and which, according to our appraisement of the testimony, cured the objections pointed out in the letter to Glasscock of December 14, 1922.

On February 13, 1928, plaintiffs filed this equity action in the Breckinridge circuit court against defendants, seeking rescission of the contract and a restoration to them of the $500 cash consideration paid at the time when the deed was delivered, upon the ground, as stated in the petition, of mutual mistake of the parties in failing to incorporate in the deed the true consideration for the contract, and upon the further ground that fraud was practiced upon them by defendants, and that the title was imperfect. The material averments of the petition were properly put in issue, and, upon final submission after proof taken, the court adjudged a rescission, and to reverse that judgment defendants prosecute this appeal.

The matters alleged in the petition to have been a part of the consideration for the contract, and which it was alleged were omitted from the deed, were that defendants agreed to procure the railroad company to construct a new fence along one side of the conveyed tract, and, if unsuccessful, that defendants themselves would do so; that they agreed to put a new roof on the residence located on the land; that they agreed for plaintiffs to

retain all the corn shocks then on the land, and to turn over to plaintiffs one-half of the wheat and rye straw of those crops then growing on the land; that plaintiffs were to have a pair of mules then being worked on the farm; that defendants agreed to themselves procure the Louisville bank to make the loan to plaintiffs, and, upon failure thereof (employing the language of plaintiffs in their testimony), "there was to be no trade"; that defendants agreed to deliver to plantiffs an abstract of the title to the land upon delivery of the deed thereto, which they had not done, and plaintiffs sought a rescission and cancellation of the deed and a restoration of the status of the parties to its former condition, or a reformation of the deed so as to conform to the true contract. It also was alleged that defendants' title was defective, which defects were set out in the petition, and which as alleged, defendants fraudulently concealed from plaintiffs, and upon that ground also they sought a rescission.

According to our interpretation of the record, there are so many obstacles in the way of plaintiffs' success and militating against the correctness of the judgment that we are somewhat puzled to know just where to begin the discussion of the merits of the case. In the first place, it is doubtful whether any of the matters complained of could be regarded as elements of the consideration so as to permit parol testimony to establish a consideration different from the one stated in the written contract, under the well-established rule permitted by the practice. They appear, rather, to be substantive elements and independent obligations of the contract itself instead of parts of the consideration for the contract, and especially is that true with reference to the other things that defendant is alleged to have agreed to in addition to those incorporated in the deed. But, however that may be, neither cancellation nor rescission will be enforced by a court of equity on the ground of mistake, unless the mistake is mutual, except, perhaps, in extreme cases, to which this one does not belong. The necessity of mutuality in the relied on mistake is recognized by all text-writers and, so far as we are aware, by all courts, including this one, as will be seen from the domestic cases of Hill v. Pettit, 66 S. W. 188, 23 Ky. Law. Rep. 2001; Litteral v. Bevins, 186 Ky. 514, 217 S. W. 369; Ellis v. Burgess, 208 Ky. 268, 270 S. W. 753; Williams v. Harvey, 192 Ky. 684, 234 S. W. 315, and many others cited in those opinions as well as still others preceding and

following them. There is no case holding to the contrary, and the cited ones, together with those of Federal Chemical Co. v. Pioneer Coal & Coke Co., 197 Ky. 110, 246 S. W. 127; Electric Loose Leaf Floor v. Electric Planing Mill Co., 196 Ky. 816, 245 S. W. 886; Hemphill v. New York Life Ins. Co., 195 Ky. 783, 243 S. W. 1040; Whitt v. Whitt, 145 Ky. 367, 140 S. W. 570; Ison v. Sanders, 163 Ky. 605, 174 S. W. 505; Robinson v. Eastern Gulf Oil Co., 196 Ky. 385, 244 S. W. 914; Huntsman v. Monarch Oil & Gas Co., 197 Ky. 607, 247 S. W. 754; Cole v. Young. 167 Ky. 600, 181 S. W. 177, and many others, some of which are cited in the opinions in those cases, also follow the established rule that, to obtain a cancellation or rescission of an executed contract on the ground of mistake, the testimony must be both clear and convincing, "and lead to the logical conclusion that by mutual 'mistake' the contract does not express what the parties had in mind when it was executed."

Plaintiffs insist that the terms of the contract sought to be rescinded were agreed to on November 19, 1927, at the home of Mrs. Snyder, the mother of Mrs. Irvin, in the presence of herself, the plaintiff, her husband, her sister and her mother; and, in expressing the terms of the contract covering the alleged omissions therefrom in the deed, the testimony of each of them resembles so much that of the others as to be comparable with two bullets molded in the same mold. On some collateral matters they quite materially differ, but upon the vital essentials to sustain the allegations in the petition the testimony of one of them is a facsimile of that of the others. However, it was not shown that there was no fence where it was alleged defendant agreed to construct one, nor was it shown that the roof to the residence was out of repair, except by a hearsay statement attributed to the wife of the occupant of the residence, and who was not introduced, though her husband, the tenant on the farm, did testify for defendants, and stated, as did also defendant Dennie Sheeran, that the roof was a metal one, and had been newly painted, and had but one small leak in it. None of the latter testimony was denied by any witness who testified in the case. It was also proven that at the time when plaintiffs alleged the terms of the contract were agreed upon, there were no mules upon the farm, the last pair having been sold and taken away some months theretofore, and that testimony was not denied

by any one. It would therefore appear that the circumstances to which we have referred would render it most unreasonable for defendants to agree to perform those two alleged omissions as a part of their contract.

But Mr. Irvin and Mr. Sheeran met in a bank in Hardinsburg on November 21, 1927, and the cashier of that bank was a witness to the contract, and made a memorandum of it, after which the two contracting parties went with it to the law office of Mr. Allen R. Kincheloe in Hardinsburg for the purpose of having him prepare the deed in accordance with the written memorandum. He did not do so at that time, because it was thought necessary to have the land first surveyed in order to obtain an accurate description of it, and which was done within a day or so thereafter, and on the following 24th day of November the deed was prepared by the attorney in his office, and upon which occasion both Mr. and Mrs. Irvin were present. It was read to them by the attorney, and Mrs. Irvin also read it, while Mr. Irvin, if he did not read it, had full opportunity to do so. Not one word was then uttered by either of them as to any omissions from the deed, though they then had their attention called to the fact that the abstract was not ready, and to that extent the contract was not then being literally complied with. However, they consented to a postponement of its preparation, and went away and later recorded the deed. If, therefore, the testimony of plaintiffs and their witnesses as to the time and terms of the first agreement, notwithstanding the facts and circumstances which we have related militating against its accuracy, should be accepted by us as true, we then have a situation where the contract was later reduced to writing, and under the prevailing rule it will be presumed that all prior or contemporaneous agreements or understandings, not incorporated in the writing were abandoned, and that the writing included the whole contract.

Without further specification of witnesses or recitation of their testimony, we deem it sufficient to say that under the "clear and convincing" rule, supra, relating to the quantum of evidence and its convicting effect in cases like this, we conclude that it was insufficient in this case to establish even a mistake on the part of plaintiffs, much less a mutual one on the part of themselves and also the defendants, so as to entitle them to the relief sought, or to alter the consideration, if the disputed

matters could be considered solely as a part of it, but which latter, as hereinbefore intimated, we seriously doubt. As hereinbefore stated, the deed recited that application was to be made to the Louisville bank to procure a loan of $4,000 with which to pay the first note of that amount, and, when done, defendants agreed to release their prior lien to that extent in favor of the lender of that sum to plaintiffs, and to accept a second lien for the $2,000 note, with the additional security of the agreed collaterals thereto.

We have so far proceeded upon the theory that, if the alleged mistakes were mutual and sustained by sufficient evidence, the relief prayed for could be granted, but which, we are convinced, is not true. Neither cancellation nor rescission may be obtained where adequate relief may be given at law. 9 C. J. 1172, sec. 27, and cases cited in the notes, and Summers Fiber Co. v. Walker, 109 S. W. 883, 33 Ky. Law Rep. 153. Under that rule, if it had been conclusively established that defendants agreed to the comparatively minor matters and things that plaintiffs insist were parts of the contract, or of its consideration, the failure to perform them by defendants could easily be adjusted without impairing any rights of plaintiffs in a suit at law wherein damages for such failures could be recovered, or could be offset against proceedings to collect the unpaid consideration. The failure to erect a fence, to roof the house, to furnish the mules, or to perform the other matters complained of, could without detriment be remedied in that manner, and for that reason also plaintiffs were not entitled to a rescission of the executed conveyance to them by defendants, if the testimony had established the facts as averred by them.

The alleged fraud on the part of defendants consisted in their refusal to perform the alleged omitted portions of the contract and in their misrepresentation or concealment of their alleged defective title. We have seen that the evidence was insufficient to prove the alleged omissions or substantial parts of the contract from the deed, but, if it were otherwise, then the refusal to comply with a promise to be performed in the future is not ordinarily such a fraud as will authorize a rescission of the contract, where, as we have seen, an action at law would give adequate relief; and a defect of title that may be subsequently cured, although intentionally mis-

represented, would not authorize a rescission, nor does an innocent representation of a minor defect in title establish fraud sufficient to authorize cancellation or rescission upon that ground when the defect may be cured or the vendee obtain adequate relief in an action at law, and the vendor is a resident of the state and not insolvent. See English v. Thomasson, 82 Ky. 280. That is especially true where the conveyance contains a warranty of title and the vendee has not been evicted. Goatley v. Harmon, 197 Ky. 672, 248 S. W. 212; Bryant v. Green, 193 Ky. 139, 235 S. W. 10; and many other cases that could be cited. Other cases supporting the principles hereinbefore announced will be found in volume 2 Caldwell's Kentucky Judicial Dictionary, pp. 2172 to and including 2175; same publication, volume 4, pp. 296, 297; and volume 6, pp. 2408 to and including 2411.

The alleged defect of title is bottomed upon provisions of the will of J. J. Pate, who died in April, 1925, a resident of Breckinridge county. The land here involved was conveyed to defendant, Dennie Sheeran, and the testator, Pate, jointly, by Sarah E. Davis and husband on January 5, 1907. The testator was a bachelor, and had for a great number of years resided with defendants. He had, as his only near relatives, two brothers, and in his will he devised all of his property, including his one-half undivided interest in the involved land, to his other joint owner and defendant, Dennie Sheeran; but whether the terms of that bequest were such as to vest the fee-simple title in Sheeran, or only a life interest therein, as is intimated by plaintiffs, we need not determine, since the testator expressly gave Sheeran the power and right to sell and convey the devised property during his lifetime, and full authority to do so was thereby conferred upon him, although his devised interest may have been only one for his life or less than the fee. The alleged defect, therefore, is not found in that provision of the will.

By item III of the testator's will he bequeathed to his two brothers, if living at the time of his death, $50 each, but, if not living at the time of his death, such bequests were to pass under the general devise contained in above item of his will. In item V of the testator's will he provided for the erection of a monument to his grave, at a cost not to exceed $100. Plaintiffs insisted in the court below, and are doing so in this court, that the provi-

sions in neither item III nor V have been complied with, and for that reason defendants did not tender a perfect title to them. What we have hereinbefore said concerning plaintiffs' adequate remedy at law, and concerning their warranty of title and no eviction, constitutes a sufficient answer to this particular contention. But it was shown at the trial that the two brothers of J. J. Pate predeceased him, and that a monument of the character indicated in the will of the testator had been constructed at the time of the taking of the testimony in this case and before its trial, though done after the controversy arose, and which was a curing of that defect, if it could be classified as one.

Our reading of this record convinces us that the foundation for this litigation was and is a dissatisfaction of plaintiffs with their trade. Every objection and contention made by them, if true, is subject to correction in a manner and pursuant to a method disentitling them to the only relief sought by their petition. With reference to the obtention of the loan, their contention is that defendants positively agreed to obtain it from the particular bank in Louisville. No time was specified as to when they should do that, nor as to when any other of the complained of matters were to be performed, but, notwithstanding such failure of specified times for performance, plaintiffs quickly seized upon the fact that they had not obtained the loan on January 1, 1928, which they assert was the maximum limit of time for the procuring of the loan, and insisted that a failure on the part of defendants to perform that alleged obligation at the particular time entitled them to a rescission of the deed, and which was hastily followed by the filing of their petition for that purpose. Before the petition was filed and to allay their evident dissatisfaction with their bargain, defendants offered to advance to them the sum of $4,000 upon the exact terms that would have been demanded by the Louisville bank, if it had made the loan, and the same offer was also inserted in defendants' answer as a part thereof, but which plaintiffs declined to accept.

As a basis for the contentions so made, it is further insisted by counsel for plaintiffs that the promise of defendants to procure the loan (but which is not sufficiently proven) on or before January 1, 1928, was of the essence of the contract, and upon failure to perform it, plaintiffs

were entitled to rescind the deed. We do not so interpret the law. On the contrary, it is pointed out in the case of Rogers Bros. Coal Co. v. Day, 222 Ky. 443, 1 S. W. (2d) 540, that at law time is generally of the essence of the contract, "but that generally it is not so regarded in equity. In the latter forum the question is viewed from the standpoint of the intention of the parties as gathered from the particular involved contract, and, unless the intention to make time the essence of the contract is clearly expressed, or necessarily implied, it will not be so regarded." Many cases and text-book authorities are cited in that opinion in support of the excerpt, and, according to that rule, if it had been indisputably shown in this case that defendants obligated themselves to obtain the loan, *and* to do so on or before January 1, 1928, that fact, of itself, would not be sufficient to take the case out of the equity rule and to adjudge a rescission upon failure of performance on or before that time.

Viewing the case, therefore, from any of the standpoints urged by counsel for plaintiffs, we are unable to coincide with the judgment of the learned trial judge, and, for the reasons stated, the judgment is reversed, with directions to set it aside and to dismiss the petition.