## Williams et al. v. Reinert.

(Decided Nov. 17, 1933.)

BARBOUR & BASSMAN for appellants.
WM. C. BUTEN for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On April 23, 1930, the appellee and plaintiff below, Della Reinert, entered into a written contract with appellants and defendants below, P. D. Williams and wife, Helen Williams, and William Foertmeyer and wife, Virginia Foertmeyer, whereby she agreed to purchase, and they agreed to sell to her, "a certain house & lot located at No. 9 Highland Avenue, Fort Thomas, Kentucky," for the agreed consideration of $10,000, $3,000 of which was to be paid by the conveyance of another lot to defendants by plaintiff, which she later did. Pursuant to the contract, and on May 3, 1930, defendants completed the execution of a deed to plaintiff purporting to convey to her the property mentioned in the con-

tract of purchase, and it by consent was left with a Mr. Scott, who was attorney for a building and loan association from whom plaintiff borrowed the cash payment for the balance of the consideration, and she executed simultaneously a mortgage on the property to secure that loan. Mr. Scott, pursuant to an understanding to that effect, delivered the deed to the county court clerk for record on May 7 thereafter, and, so far as this record shows, it remained in the possession of that officer continuously thereafter; but whether so or not is immaterial as affecting the merits of the case.

The contract made no mention of the dimensions of the lot, but only described it in the language above inserted. However, the decription in the deed, which was prepared by, and left with, Mr. Scott, did describe it as fronting on Highland avenue 50 feet and on Woodland avenue 111.75 feet; but the testimony is practically uncontradicted that plaintiff never saw or read that description until after this controversy arose. However, if she had done so, we think it would not militate against the right she sought and obtained by the judgment rendered in this action. Some month or more after the execution of the deed, during which time plaintiff made some repairs to the property, she discovered for the first time that the property as described in the contract, and which she overwhelmingly proved she purchased, instead of fronting only 50 feet on Highland avenue, its actual frontage was 55 feet, and that the deed by describing it as fronting thereon only 50 feet ran the eastern line of the lot practically against her house and left her no space whatever on that side. She furthermore discovered that on May 12, 1930, just nine days after the deed executed by plaintiffs was made to her, they conveyed to a Mr. Smith, who was the adjoining owner on the east side of the lot, the remaining 5 foot frontage on Highland avenue. She likewise discovered that there was a street assessment lien against the lot amounting to about $133, which she claimed was not only concealed from her, but its existence misrepresented to her when she inquired about incumbrances thereon. She then filed this equity action on July 28, 1930, in the Campbell circuit court against defendants, and in her petition she alleged such misrepresentations, and also fraud practiced on her, and prayed for a rescission of the contract. She tendered a deed to defendants, and asked that they be required to reconvey

to her the lot that she had conveyed to them as a part of the consideration, pursuant to the terms of the contract. The answer was a denial of the material averments of the petition, and upon submission, after extensive proof taken, the court sustained the prayer of the petition and rescinded the contract on terms that placed the parties in status quo, and from that judgment defendants prosecute this appeal.

The involved property was formerly owned by a Mrs. Evans, who was the mother of Mrs. Williams and the grandmother of Mrs. Foertmeyer, the latter of whom being the only heir of a deceased daughter of Mrs. Evans, but Mr. Evans, after the death of his wife, was vested with a life estate in the property, and upon his death, which occurred some year or more before the transaction here involved, the estate in remainder vested in the two heirs of Mrs. Evans. Defendant P. D. Williams was a real estate agent in Newport, and it was entirely through him that the sale was negotiated to plaintiff. The latter testified that in the preliminary discussion preceding the execution of the contract she inquired of Mr. Williams, while they were both upon the property, as to the eastern line of the lot, and that he stated that it ran to an iris hedge located 6.41 feet from the eastern wall of the house on the lot, and which was, according to his proven statement, the line between the lot being conveyed and that of Mr. Smith, the adjoining proprietor. She was completely corroborated in that statement by her sister, Mrs. Miller, who was present, and also by a Mrs. Heil, who was then a tenant occupying the house.

Williams denied making any such statement, and says that he stated to defendant on that occasion that the lot fronted on Highland avenue 50 feet, and that he did not know where its eastern line began. However he is contradicted as to that statement by, not only the three witnesses referred to, but likewise by a Mr. Ware, who was passing along the walk in front of the property at one of the times defendant Williams is proven to have made that statement. If there was no other testimony in the case than what we have related, there would be practically four witnesses testifying in favor of plaintiff against one (P. D. Williams) testifying for defendants, with no impeaching fact or circumstance to impair the credibility of plaintiff's witnesses, except the one that she was an interested party, but which also

applies to the sole witness who testified for the defendant.

The law is, that the grounds authorizing the rescission of an executed contract must be proven by "clear and convincing" evidence (Roberts v. Parsons, 195 Ky. 274, 242 S. W. 594; Trustees of First Christian Church of Fort Thomas v. Macht, 228 Ky. 628, 15 S. W. (2d) 509; Perry v. Thomas, 232 Ky. 781, 24 S. W. (2d) 603, and other cases therein cited), and it is insisted by counsel for defendants in their brief filed in this court that the testimony in this case did not meet that requirement; but with which we do not agree. If there was no other testimony, fact, or circumstance in the case than that above referred to we would then be disposed to construe the testimony as sufficiently complying with that rule.

But in addition to such testimony there is the contract itself which describes the property to be conveyed to plaintiff as the "house and lot located at No. 9 Highland Avenue, Fort Thomas, Kentucky." The lot located at that point and then owned by defendants fronted 55 feet on Highland avenue, and the inevitable conclusion would be that the intention and purpose was to convey it in its entirety. Everyone in the neighborhood, because of the appearances, considered the lot as extending to the iris hedge, and that it marked the line separating the lot from the one adjoining it on the east. The occupants of the property took care of the grass forming the lawn in the yard clear out to the hedge, and which, as we have said, was then a part of the lot upon which the house stood. It also uncontradictedly appears in the testimony that Mrs. Evans before her death owned a considerable frontage on Highland avenue, and that she sold a portion of it east of the involved property to a Mrs. Helm, leaving a corner lot upon which she later built a residence as fronting only 50 feet on that avenue. She later became convinced that her eastern line was too near her residence (being only 1.41 feet), and she repurchased from Mrs. Helm 5 feet additional frontage, thus making her lot front Highland avenue 55 feet instead of 50 feet. She therefore held title to the entire 55 feet by two separate deeds, although she had formerly owned the whole of it, as well as the property adjoining it on the east.

On the day Mr. Scott prepared the deed at the re-

quest of Mr. Williams, the latter furnished to him the dimensions of the lot containing its frontage on Highland avenue, when it was only 50 feet, and did not inform him of the later acquisition of the additional 5-foot frontage, and it was because of such fact that the lot was so described in the deed prepared by Mr. Scott. In addition to such convincing facts, corroborating the testimony of plaintiff's four witnesses, supra, there is the circumstance that almost immediately following the execution of the involved deed the grantors therein got busy and sold the remaining narrow strip of 5-foot frontage to Mr. Smith for something like $100 per front foot. Moreover, plaintiff testified, and she was corroborated by her sister, that during the negotiations of the trade she suggested to Mr. Williams the necessity for considerable repairs to the house, and because of which she was hesitating to make the purchase, when he stated that she could sell a part of the lot to Mr. Smith, the adjoining owner, for enough to make the repairs. He practically admits making that statement, but, when on cross-examination he was asked how that could be done if the lot was only 50 feet wide with the eastern line within 1.41 feet of the house, he answered that he had reference to selling some part of the rear portion of the lot and not to any portion of its frontage on Highland avenue. To say the least of it, his answer seems to have been an emergency one, since there is nothing appearing in the record to show why Mr. Smith would desire any portion of the rear part of the lot, or that such acquisition by him would materially add either to the beauty or usefulness of his lot; whilst widening it on the only street upon which it fronted would be a material benefit thereto. Under the testimony that we have related, we find no hesitancy in concluding that the proof adduced at the trial completely sustained the grounds relied upon for the relief sought, and that the court properly so found.

The fact, therefore, being that defendants, through their representative, P. S. Williams, having misrepresented the true boundary line of the lot actually conveyed, and having fraudulently procured the deed to be executed so as to embrace only a 50-foot frontage instead of a 55-foot one, and which was the actual width of the lot, the next question is, whether such exclusion was a sufficiently material fact as to authorize the granted rescission. The law is that the misrepresented

fact must be a material and substantial one, or that the practiced fraud should in like manner affect the rights of the defrauded party before a decree of rescission may be rendered. In other words, no such relief will be granted upon trifling and immaterial grounds, or where compensation will afford complete relief. Sheeran v. Irvin, 230 Ky. 307, 19 S. W. (2d) 976, and Pond Creek Coal Co. v. Runyon, 199 Ky. 539, 251 S. W. 841. But the misrepresented fact in this case, and the result of the practiced fraud in describing the lot in the deed as fronting only 50 feet on Highland avenue, were not so trifling as to be so immaterial and for which a recovery at law would be adequate. The result was to give plaintiff no space whatever beyond the eaves of the roof to her house on its east side, and to thereby also detrimentally affect the symmetrical attractive appearance of both house and lot from what it would otherwise be if the deed had included the omitted 5-foot strip.

Having arrived at such conclusion, it becomes unnecessary to discuss or determine the materiality or sufficiency of the other ground relied on, i. e., of the street assessment incumbrance upon the lot which plaintiff alleged was concealed upon inquiry made concerning incumbrances, and we will devote neither time nor space to a discussion or determination of that ground.

Wherefore the judgment is affirmed.