JUDGE PBYOB
delivered the opinion oe the court.
On the 16th of September, 1873, a man, under the assumed name of R. M. Norton, with a letter of introduction purporting to be from Morgan & Sons, of New York, presented a forged check, payable to himself, for thirteen thousand dollars on the Ninth National Bank of New York, at the counter of the Farmers and Drovers’ Bank, in the city of Louisville, and had the amount placed to his credit on the books of that bank. He then drew from that bank upon the faith of this check the surii of sixty-five hundred dollars. On the same day, and about the same hour of the day, another R. M. Norton entered the Western German Savings Bank, in Louisville, with a similar letter of recommendation from the same house in New York, and with a check for a like amount—thirteen thousand dollars—payable to himself on the Ninth National Bank, in New York, and after having the amount placed to his credit in that bank drew upon the credit of the check the sum of forty-five hundred dollars. The letters and checks presented to these banks were all forged and fraudulent, and each bank was swindled out of its money.
One of the R. M. Nortons was afterward arrested in Indiana, and there was found on his person the forty-five hundred dollars obtained by him from the Western German Savings Bank. This money was identified by its cashier with much certainty—not only by reason of the amount, but the wrapping upon it when found in the possession of the thief was the same that enveloped the package when it left the hands of the cashier. The R. M. Norton who obtained the money at the Farmers and Drovers’ Bank was afterward arrested in *672 some town in Pennsylvania for an offense against the laws of that- state, but no part' of that money has ever been recovered.
It seems from the evidence that the two Nortons were so much alike in personal appearance that the Norton at the Western German Savings Bank, on September 16,1873, would be readily identified as the Norton at the Farmers and Drovers’ Bank on the same day; but the facts establish beyond controversy that they wefe different persons, engaged in swindling under the same name and by the same means, the one obtaining the money from the German Savings Bank and the other from the Farmers and Drovers’ Bank.
The officers of each of these-banks—Ullman as-president of the German Savings Bank, and Standiford of the Farmers and Drovers’ Bank—being anxious to capture the, thief and*, recover their money, entered into an agreement by which the expenses incurred for that purpose were to be paid-by the two banks in proportion to the amount fraudulently obtained from each; and if any of the money was recovered, it was to be apportioned between them in the same manner.- Under this agreement a considerable sum of money had been expended by each bank in the attempt to arrest the guilty parties, and when'Norton was captured with the forty-five hundred dollars in his possession the two banks employed the same attorney, and had this money, then in the hands of the chief of police, attached in order to secure it. While these actions were pending, and before the money had been paid .over, the Western German Savings Bank filed a petition to be made a defendant to the action instituted by the Farmers and Drovers’ Bank, in which it is alleged, in substance, that-this' forty-five hundred dollars was the money belonging to the Western German Savings Bank, and that when the agreement was made between the two banks it was believed by both, or the officers of both, that the fraud and forgery had been -com *673 mitted by the same person; and that this belief was indulged in by all the parties until after the 19th of December, 1873, when for the first time both parties discovered that the Farmers and Drovers’ Bank had lost its money by the fraud of another and different person, who had been identified by the officers of the Farmers and Drovers’ Bank as the person obtaining the money from that bank; that these facts were material, and their discovery entitled the petitioner to a rescission 'of the agreement and a judgment for the money.
This petition was permitted to be filed, and by proper pleadings an issue was made on the facts alleged. The court below by its judgment enforced the agreement, and from that judgment the Western German Savings Bank appeals.
. It appears from the proof in the cause that all the bank-officers who have deposed, except the cashier of the Farmers and Drovers’ Bank, were confident in the belief that one person committed both offenses, and the Norton arrested was mistakingly identified by the president of the Farmers and Drovers’ Bank as the man who obtained the money at that bank.
Conceding all the facts alleged in appellant’s petition to be true, or the allegations sustained by the proof, after a careful consideration of the argument by counsel we have been unable to perceive a cause of action, alleged or proven, that would authorize the chancellor to grant relief upon the ground of a mistake either of law or fact. It may be true that if the offense had been committed by one person without any confederate, the chances of recovering the money from him, if arrested, would be greater than if the crime had been committed by two parties and only one arrested, the probability being that the thieves would divide the plunder.. This speculative conclusion, if indulged in, could not avail appellant in this case, as the proof shows that the twa persons committing these offenses must have confederated together *674 for that purpose, and in a division of the spoils, the Earmérs and Drovers’ Bank having contributed more to the joint fund than the Western German Savings Bank, if the party obtaining. the sixty-five hundred dollars had been arrested with the money in his possession, the appellant would have received more under the agreement than if the Norton had been arrested who took the- forty-five hundred dollars. The parties entered into the agreement in the absence of all knowledge of any of the material facts connected with the frauds and forgeries, except the loss of the money, and its terms were as favorable to the one as the other.
It is insisted by appellant that if the parties had known all the facts, the contract would never have been made. We are well satisfied, if appellant could have known that the Norton who had practiced the fraud on its bank would be arrested and the identical money obtained by him recovered, that no agreement would have been entered into for an equitable division of the money in the event of its recovery; and are equally as well satisfied that if the officers of the Western German Savings Bank had known at the time they made this contract that these two confederates in crime had practiced these frauds, it would have been an additional incentive with them for combining the energies and means of both banks in order to bring them to punishment.
The rule is “that an act done or contract made under a mistake of a material fact is voidable and relievable in equity; but it is essential that the fact must be material to the act or contract, and an efficient cause for its execution, and such as the party could not by reasonable diligence obtain knowledge of.” (1 Story’s Equity, p. 148.) It is also a well-recognized rule of equity that where the means of information are open to both parties, and where each is presumed to exercise his own diligence and judgment in regard to to all extrinsic circumstances, a court of equity will not interfere;/or where the *675 fact is equally unknown to both parties, and each has equal or adequate means of information, or where the fact is doubtful from its own nature, the parties having acted in entire good faith, no relief will be granted. (1 Story’s Equity, 156; Kerr on Fraud and Mistake, 408.)
Applying these equitable principles to the facts in this case, it will be at once seen that the mistake or ignorance of fact complained of by appellant can afford no ground for relief. The belief that the same person obtained the money from each bank, with the entire absence of knowledge that others were engaged in these bold frauds, was not the direct or even the remote cause of the appellant entering into the agreement with the Farmers and Drovers’ Bank. The parties to the contract had not only the same means of information, but were in possession of the same facts with refei-ence to these bank transactions at the time the contract Avas made. There can be no doubt but that each of these bank-officers had some theory of his OAvn as to the manner in Avhich these frauds Avere practiced, which Avhen the facts Avere made to appear proved to be untrue; but there was really no mistake by either party in making the agreement. They AArere only in ignorance of certain facts that must of necessity have transpired, and the discovery of these facts Avas the inducement to enter into the contract.
The very object of the agreement was to enable each of the parties to obtain information in regard to facts and persons, the existence of Avhich each of the contracting parties was at the time entirely ignorant.. A considerable sum of money had been contributed by both banks for that purpose; and AAdien, by reason of the united efforts of both and the expenditure of that money, the object in vieAV has been partially accomplished, and the facts ascertained by the arrest of one of the guilty parties, the chancellor is asked to relieve the appellant from the effect of its obligation, because the very facts have been discovered of which the officers of both banks were ignorant, and for *676 the development of which, by the terms of the contract, they had devoted their time and expended their money.
If the Norton in Pennsylvania had been arrested instead of the Norton in Indiana, and the sixty-five hundred dollars recovered that had been taken from the Farmers and Drovers’ Bank, the idea of a mistake for the reason that two parties were engaged in these frauds instead of one would hardly have suggested itself to appellant; and, however reluctant appellant may be to part with this package containing forty-five hundred dollars, a court of equity will not lend its aid to the violation of such a fair and equitable agreement as is shown to have been made by the parties in this case.
The fact that the cashier of the Farmers and Drovers’ Bank proposed to surrender this money to appellant in consideration of the latter paying the expenses incurred by that bank, .including the expenses of the trip to Pennsylvania, is no evidence of any equitable right on the part of appellant. This proposition, before it was accepted, was withdrawn, and the appellant only made another mistake in not accepting such a proposition at once. Nor can the fact that appellee may have no remedy or right to a judgment against R. M. Norton in the action in which the attachment was obtained (a question we do not decide) affect its right to recover of .appellant under the contract. The money secured was that fraudulently obtained from appellant, and under the agreement appellee has an interest in that fund.
The judgment of the court below is affirmed.