## Huntsman v. Monarch Oil and Gas Company.

(Decided February 9, 1923.)

### Appeal from Allen Circuit Court.

1. Mines and Minerals—Lease—Construction.—The sale of a seven-eighths interest in a gas and oil lease, with the proviso that the other one-eighth is to be carried free of cost to the seller, construed as a reservation to the seller of one-eighth of the oil acquired under the lease, free from the cost of digging and pumping the wells.

2. Mines and Minerals—Lease—Mistake in Drafting Contract.—Evidence examined and held not to show mutual mistake in the drafting of a contract for the sale of an oil and gas lease.

DENHARDT & HUNTSMAN for appellant.

GILLIAM & GILLIAM and DAYTON T. MITCHELL for appellee.

OPINION OF THE COURT BY JUDGE MOORMAN—Reversing.

In 1918 Rupert Huntsman sold and conveyed to the Monarch Oil and Gas Company seven-eighths of his interest in an oil and gas lease on a ninety-acre tract of land in Allen county known in the record as the W. E. Oliver lease. The conveyance, written at the bottom of the original lease, is as follows:

"For and in consideration of one dollar cash in hand paid, the receipt whereof is hereby acknowledged, I hereby sell, transfer and assign seven-eighths of my rights, title and interest in and to the within attached W. E. Oliver oil and gas lease, to the Monarch Oil and Gas Co., the other one-eighth to be carried free of cost to me.

"Said lease being duly recorded in Lease Book No. 6, at page 9, Allen county court clerk's office.

"This 19th day of July, 1918.

"RUPERT HUNTSMAN."

Huntsman owned seven-eighths of the oil and gas rights to the land. The actual consideration, not stated in the assignment, was five thousand dollars. The Monarch Oil and Gas Company proceeded with the development of the property and arranged with the Indian Refining Company, which operated a pipe line, to dispose of the oil produced. A controversy arose between Huntsman and the appellee as to whether the former was entitled to one-eighth of the oil after the royalty had been paid to the original lessor, free from any cost of production, or whether he was chargeable with one-eighth of the cost of pumping and operating the wells.

Huntsman filed this action to recover from the oil company $2,070.22, being the amount, as he claimed, that appellee had wrongfully retained from the gross sales as his one-eighth of the cost of operating the wells.

Appellee filed answer denying the material averments of the petition and alleging that Huntsman was bound, under the contract of sale, to pay one-eighth of the cost of operating the oil wells after they had been drilled and the property fully developed. It further pleaded that the written assignment did not contain the true contract, but that the real contract was that Huntsman should pay one-eighth of the cost of operating the leasehold after it had been developed; and it asked that the contract be reformed to conform to the true agreement between the parties. These affirmative pleas were denied. The circuit court, on the evidence heard, rendered judgment in favor of appellant for $225.49, with interest from December 28, 1920, until paid, the amount due Huntsman, as found by the court, at the time the suit was instituted and after charging him with one-eighth of the operating expenses of the leasehold. It found that the real contract between the parties was that Huntsman's one-eighth interest should be carried

free of cost in the development of the leasehold, but not in the operating expenses after the wells had been drilled. The judgment does not reform the contract but merely construes it, as indicated. Huntsman has prosecuted this appeal.

The language of the contract absolves appellant not only from the cost of drilling, but also from that of operation. It is argued, however, for appellee that it was intended to mean that Huntsman's one-eighth interest was to bear its proportion of the cost of operation. In support of that argument we are referred to a letter that Huntsman wrote to the president of appellee on July 5, 1918, in which he offered to transfer the lease for $5,000.-00 cash and "a 1/8 interest carried in the development of the lease of your company's 7/8." This proposition was never accepted, nor does the final agreement with reference to the terms of payment conform to it. As to whether it contains a correct statement of the contract as to the cost of operation after the completion of the wells is a question about which the evidence is conflicting.

Another paper which is said to support appellee's theory is the bond that Huntsman executed, indemnifying and holding appellee harmless against any loss on account of the failure of title to the interest conveyed. This bond refers to the provision of the contract under consideration, and recites that the Monarch Oil and Gas Company is "to carry a one-eighth interest in all development placed on said land by the Monarch Oil and Gas Company free of cost for the said Rupert Huntsman." This writing, with the other referred to, and the acceptance by Huntsman of remittances for his part of the oil after deducting one-eighth of the cost of operation are relied on as proof of the mistake alleged and as supporting the construction adopted by the trial court.

The phrase, "one-eighth interest to be carried free of cost to me," is not, in our opinion, susceptible of the construction that the judgment places on it. We must, therefore, look to the evidence to ascertain whether the contract expresses what the parties had in mind when making it or whether there was a mistake made in the drafting of it, as alleged in the answer. It may be noted here that the answer does not contain an allegation that the mistake was mutual, which is necessary to effect a reformation. But waiving that defect, and approaching the subject as if the question were presented in the pleadings, we have a case in which the relief sought can-

not be granted unless the evidence is clear and convincing. A preponderance of the evidence is not sufficient, but the evidence must be convincing and lead to the logical conclusion that by mutual mistake the contract does not express what the parties had in mind when it was executed. Whitt v. Whitt, 145 Ky. 367; Ison v. Sanders, 163 Ky. 605, and Robinson v. Eastern Gulf Oil Company, 196 Ky. 385.

It is in evidence that the assignment of the lease was prepared by an officer of the appellee, and there is some testimony to the effect that it was hurriedly prepared; also that it was the understanding that Huntsman was to pay one-eighth of the cost of operating the lease after the wells had been drilled. The latter testimony is emphatically denied by Huntsman. It was also shown on behalf of appellee that Huntsman had accepted remittances showing that deductions had been made for his part of the cost of operation. Huntsman said he accepted these remittances because of the doubtful solvency of appellee and he thought it good business to accept what he could get. It does not appear that he ever admitted his liability for any part of the cost of operation, and we do not, in view of his explanation referred to, regard the acceptance of the remittances as amounting to a waiver of his right to claim the benefits of his contract as correctly construed. The words appearing in the bond, "to carry a one-eighth interest in all development placed on said land by the Monarch Oil and Gas Co. free of cost for the said Rupert Huntsman," do not necessarily corroborate appellee's contention. Huntsman said that he understood when the negotiations were had that the word "development" included not only the drilling but also the pumping of the wells, and that construction does not seem to us to be strained. The record is not entirely clear as to the meaning of the word as applied to oil and gas leases, and in view of that fact we do not consider the evidence sufficient to warrant a reformation of the contract. It follows that the interpretation placed on the contract by the lower court was not justified, since the language actually used is clear as to the duty of the Monarch Oil and Gas Company to carry the one-eighth interest of Huntsman free of cost to him, and necessarily excludes the idea that he should pay any part of the cost of operation.

The judgment is reversed and cause remanded for further proceedings consistent with this opinion.