## Daniel Boone Coal Company v. Crawford.

(Decided June 10, 1924.)

### Appeal from Perry Circuit Court.

1. Reformation of Instruments—Mistake Must be Mutual, or there Must be Negligence or Fraud.—To authorize reformation for mistake, it must appear that it was material, and either that it was

mutual, or, if made by one party, that it was not caused by his negligence, but by negligence or fraud of party benefited.

2. Reformation of Instruments—Mistake Must be Shown by Clear and Decisive Evidence.—Mistake warranting reformation must be established by, full, clear, and decisive proof, and mere preponderance of evidence is not enough.

3. Reformation of Instruments—Evidence Held Not Sufficient to Show Mutual Mistake or Mistake and Fraud.—Evidence held insufficient to show mutual mistake or mistake and fraud as to royalty clause in mining lease.

4. Appeal and Error—Appeal Not Dismissed Because Wife Not Made Party on Appeal.—In action by husband and wife for reformation of mining lease, appeal by defendant will not be dismissed because wife was not made a party on appeal, though a party to lease, where it appears husband owns property.

5. Appeal and Error—Party Selling Assets Held Sufficiently Interested to Prosecute Appeal.—Lessee in mining lease, which it sold pending litigation against it for reformation of lease, was sufficiently interested to authorize it to prosecute an appeal from a judgment ordering reformation as between lessor and such lessee.

WOOTTON, SMITH & WOOTTON and POSTLEWAITE & MARTIN for appellant.

MILLER & CRAFT and O'REAR, FOWLER & WALLACE for appellee.

OPINION OF THE COURT BY SANDIDGE, COMMISSIONER— Reversing.

On the 17th day of January, 1916, the appellant, Daniel Boone Coal Company, was engaged in mining coal from a tract of land containing 150 acres in Perry county, Kentucky, an undivided one-half interest in which was owned by the appellee, L. D. Crawford. Appellee owned two other tracts of land adjoining the 150 acres above mentioned, and on that day he and his wife executed and delivered to appellant a coal lease on these two tracts of land granting to it the usual coal mining rights for a period of twenty-five years. On April 3, 1918, appellee and his wife filed in the Perry circuit court a petition in equity against appellant by which they sought to have the coal lease in question cancelled upon the ground that appellant had not driven the entry and begun to mine and market coal thereunder within the time stipulated in the lease. On May 10, 1919, they filed an amended petition by which they sought reformation of the royalty clause of the lease in question upon the ground that, as written and signed, by fraud or mistake, it did not ex-

press the true contract between the parties and set forth a contract that the parties did not make and did not intend to sign. The issues as made by the pleadings were, whether or not appellant prosecuted the work of driving the entry and beginning to mine and market coal within the time fixed by their contract, and whether or not by fraud or mistake the written instrument did not express the real contract between the parties with reference to the royalty to be paid on the coal from the lands in question.

Appellee's first contention seems to have been abandoned, as that question seems to have played little part in the preparation of the case for trial or in the trial below, and is not involved at all as the case is presented here for review. The sole question, as presented here, is whether or not appellee produced sufficient proof to authorize a reformation of the contract between the parties in so far as it related to the royalty to be paid him on the coal mined and marketed from the lease in question. The royalty clause in the writen lease signed by the parties provided in substance that appellant should pay appellee a royalty of ten cents per ton on all coal mined from the lands, and that when the coal had been exhausted from the lands covered by the lease of April 29, 1913, and the minimum royalty of $2,500.00 a year provided for in that lease had ceased, then and thereafter during the life of the lease of January 17, 1916, a minimum royalty of $2,500.00 a year should be paid appellee.

Appellee contends that the real contract between him and appellant was that the minimum royalty of $2,500.00 a year under the lease in question should take effect and begin to operate at the end of the eighteen months' period given in the lease to appellant to drive the entry and begin mining coal from the lands embodied in the lease.

On the hearing in the court below, the chancellor adjudged appellee entitled to a reformation of the contract, and by judgment so reformed it as to provide that the minimum royalty of $2,500.00 a year should begin under the lease in question eighteen months from its date.

We have uniformly held that in order to authorize a court of equity to reform a contract for mistake it must be made to appear that it was material and either that it was mutual, that is, shared in by both parties; or, if made by one of the parties, that the mistake was not caused by his negligence but by the negligence or fraud of the party benefited by the mistake. Kolb v. Dubois, 150 Ky. 92, 149 S. W. 134; Duff & Oney v. Rose, et al.,

149 Ky. 482, 149 S. W. 884; Hobson's Exor. v. Commonwealth, 70 Ky. 649; McKee v. Hoover, 1 Mon. 34; Western German Savings Bank v. Farmers' & Drovers' Bank, 73 Ky. 674; Hill v. Petit, 23 R. 2001; Coleman v. Illinois Insurance Co., 26 R. 900; Bevins v. J. A. Coates & Son, 29 R. 978; East Jellico Coal Co. v. Carter, 30 R. 174; Crabtree v. Sisk, 30 R. 572.

It appears from the evidence on file herein that appellant, at the time the contract in question was executed, was engaged in mining coal from a tract of land, the surface of which and an undivided one-half interest in the coal under which, was owned by appellee, Crawford. The lease under which it was so operating was dated April 29, 1913. It was provided by the contract sought to be reformed that the coal from the lands covered by it would be mined and gotten out through entries and by means of equipment then on the lands previously leased to appellant. It seems that the agents of appellant from time to time had negotiated with appellee for a lease on the lands in question. Finally a day came when the vice president and the general superintendent of appellant and the appellee, after talking the matter over again, concluded that a lease could be agreed upon between them. Appellee then took appellant's vice president and general superintendent to the law office of his attorneys, Miller & Wheeler, in Hazard, Kentucky. It appears that this firm of attorneys regularly represented appellee at that time on a yearly retainer basis. The two officers of appellant had no counsel representing them. The business was taken up with Mr. P. T. Wheeler, of the firm of Miller & Wheeler, and the parties in the presence of each other stated to him the purpose of their visit and discussed fully the terms of the proposed lease between them. J. W. Craft, a stenographer and a licensed lawyer who had some connection with this firm, was called by Mr. Wheeler and the lease in question was dictated to him. The lease as drawn was rather lengthy, and it appears from the testimony that the parties spent some time discussing the various features of the lease while it was being dictated. P. T. Wheeler dictated the lease and it was taken in shorthand notes by J. W. Craft and afterwards transcribed by him. The parties signed the written lease prepared in that way. It appears that W. H. Miller, the other member of this legal firm, was in and out while the lease was being prepared, but he and no one else claims that he was present all the time. Neither L. D. Crawford nor his wife, Dulcina Crawford, could read or

write and they both signed the lease in question by making their mark. Appellee was shown to have been in poor health at the time. P. T. Miller, appellee's attorney who dictated the contract, and William J. Brown, Jr., appellant's superintendent, signed the lease as witnesses. There is some question in the testimony as to whether or not the shorthand notes were transcribed and the written contract signed by the parties the same day it was dictated. The vice president and the superintendent of the appellant both testified that it was; that appellee, L. D. Crawford, and the Daniel Boone Coal Company, by them, both signed the lease in the law office of Miller & Wheeler, and that the lease was taken the same day to the home of Crawford and there signed by his wife, Dulcina Crawford. J. W. Craft, the stenographer who prepared the instrument, testified that he had no recollection on that question. Appellee, L. D. Crawford, testified that the lease was prepared at the office of his attorneys in October preceding the date it was signed in January, 1916. Appellee swears positively that the royalty contract between them was that appellant should begin paying him the minimum royalty of $2,500.00 a year eighteen months from the date of the lease. J. W. Craft, the stenographer who wrote the lease as dictated in shorthand notes and afterwards transcribed it, testified that in the discussion of the matter in the office, as he understood it, appellant was to begin to pay the minimum royalty of $2,500.00 a year eighteen months after the date of the lease. W. H. Miller, of the firm of Miller & Wheeler, testified that he understood from what he heard of the discussion between the parties that the appellant agreed to pay the same minimum royalty under the new as under the old lease, but he did not testify as to when it should begin, and stated that he was merely in and out while the preliminary discussion was under way but was not present after Wheeler began to dictate the contract. P. T. Wheeler, appellee's counsel, to whom he took the matter and who dictated the lease in question, was not introduced as a witness by appellee and did not testify in the case. We may add with reference to the testimony of J. W. Craft, the stenographer, that he made no claim that the lease signed by the parties was not the lease that he transcribed from the shorthand notes as the lease was dictated to him by Wheeler, or that there had been any change in the contract as he wrote it up from his shorthand notes.

H. H. Heiner, vice president of appellant, and W. J. Brown, Jr., its general superintendent, who negotiated the lease for appellant, both of whom were present when •the contract was written, stated positively that the contract between the parties was that the minimum royalty of $2,500.00 a year should be paid to appellee under the contract in question only after the coal should be exhausted from the lands covered by the previous lease and the minimum royalty of $2,500.00 a year should cease under it. They both testified that the contract as written and signed by the parties set forth the true contract made by them with reference to the royalty interest; that no mistake was made by the parties when the contract was signed, and that the royalty clause of the contract, as well as its other provisions, was fully discussed by the parties at the time it was drawn and fully understood by them at the time it was signed.

Appellee, L. D. Crawford, testified that after the contract was written and before he signed it, at least a portion of it was read to him, and he did not say that the royalty clause was not read to him; his testimony on the subject being as follows: "Q. Now, when it come to the signing of the contract, tell the court whether the contract was read to you by any one? A. Well, it was part of it read, it wasn't all read. He read, my recollection is, about half of it. Q. Who was it read by? A. Wheeler. Q. You mean P. T. Wheeler? A. Yes."

His only testimony as to mistake in signing the writing is embodied in the following questions and answers: "Q. Now, the next clause in this contract provides in substance that you are to have ten cents per ton and that when the minimum royalty on the previous contract made by you and Judge Fields on the other lands shall cease, then this minimum royalty on this lease shall be $208.1/3 per month, but it does not provide that you shall have the $208.1/3 per month for the end of the eighteen months. Now, was that your contract with them? A. No, sir, just what I told you was what we agreed on. Q. Did you understand when you signed this contract that it provided that you was to have no minimum royalty from the leased premises in it until the minimum ceased on the other contract? A. No, sir, I never knowed nothing about that till after the eighteen months had run out." He did not even testify that he would not have signed the writing if he had understood its provisions with reference to minimum royalty.

Under the state of facts above disclosed, the chancellor adjudged a reformation of the instrument and under the reformed contract, by the judgment herein, appellant is required to pay the minimum royalty of $2,500.00 a year, or $208.1/3 a month from eighteen months after the date of the contract.

A court of equity is authorized to reform a contract for mistake if the mistake is mutual, that is, shared in by both the parties. From the facts produced in evidence in this case, is appears that when appellant signed the contract in question it understood the provisions of same and understood that the writing it signed declared the contract made between the parties as it understood it. There was no mistake made by appellant in signing the contract because the writing it signed evidences the contract just as it understood the contract to be. There is wholly lacking the element of mutuality of mistake to authorize a reformation of the contract sued on. The rule further provides, however, that a contract may be reformed when the mistake is made by only one of the parties if it was not the result of the negligence of the party making it, but was caused by the negligence or fraud of the party benefited by the mistake. Do the facts of this case as above disclosed measure up to that rule? To begin with there was no opportunity for appellant to be guilty of fraud in the matter. A full, fair and free discussion of all the provisions of this contract was had between the parties in the presence of appellee's personal attorney, and so had in order that he might be able to reduce the contract to writing for the parties. Appellee was represented by counsel, while appellant was not. Appellant contends that the writing prepared by appellee's attorney embodies exactly the agreement made between them with reference to the time the payment of the minimum royalty of $2,500.00 a year should begin; that as written it declares exactly the contract made between them; and that when signed by its agents and appellee, in the presence of each other, they understood the contract to be just what the writing evidenced it to be. Under these circumstances, how can it be said that, if appellee signed the writing in the belief that it contained the provision that the minimum royalty of $2,500.00 a year should be paid him beginning eighteen months after the date of the lease, when as a matter of fact it provided that such minimum royalty should begin only after the minimum royalty under the previous lease ceased, the mistake he made was not the

result of his own negligence? How can we say that the mistake of appellee, if any, in signing the contract was caused by the negligence or fraud of appellant? If appellee did not understand the contract when read to him or when signed by him, was he not negligent in not having his attorney, who was present, explain the contract to him so that he could understand it? What showing is made that appellant perpetrated any fraud? Appellant was not shown to have said or done anything to cause appellee to sign the contract or to make him believe that it contained any provisions or stipulations other than those it did contain. If he misunderstood the royalty clause, he did so himself, and his misunderstanding was not caused by anything appellant said or did about it. If solemn written engagements of parties can be upturned on the showing made by the evidence in this case, written contracts are of no value, and our statutes requiring that certain contracts must be in writing to be binding have no effect.

With reference to the character of evidence necessary to authorize the substitution of an oral contract for one in writing, in Coleman v. North American Life Insurance Company, 26 Ky. L. R. 900, we said:

> "As to the nature and amount of evidence required, we find the rule thus stated in Royer Wheel Co. v. Miller, 14 Ky. L. R. 831: 'The mistake must be clearly established by the proofs; . . . Indeed, in no case will a court decree an alteration in the terms of a duly executed contract unless the proofs are full, clear and decisive; mere preponderance of evidence is not enough; the mistake must appear beyond reasonable controversy.'
>
> "Accepting the foregoing as the correct rule, it necessarily follows that a direct conflict of testimony is conclusive against the reformation of a deed."

The evidence for appellee, when weighed in the balances of the rule, supra, as was said by the prophet Daniel of King Belshazzer of old, is "found wanting." Under all the facts of the case, we conclude that appellee wholly failed to establish that any mutual mistake was made or that if he made any mistake in executing the writing it was not caused by his own negligence or that the mistake was the result of the negligence or fraud of appellant or its agents; and, for this failure to measure up to the rule

we have uniformly adhered to, the chancellor was unauthorized to adjudge a reformation of the written contract.

Appellee contends that Mrs. Dulcina Crawford was a joint owner of the coal lands covered by the lease in question and joined in the lease; that she was a joint plaintiff in the action below and that the judgment is for the joint benefit of her and appellee, L. D. Crawford, and hence is not separable. He contends that Dulcina Crawford was not made a party to this appeal by the statement filed and that consequently the appeal must be dismissed.

According to the statement filed when this appeal was taken, Daniel Boone Coal Company appears to be appellant, and L. D. Crawford alone appears to be appellee. There is no conclusive statement in any of the pleadings that she owns any interest in any of the lands covered by the lease. The lease as copied into the record discloses beyond all question that L. D. Crawford is the owner of the 100 acre tract, one and much the larger of the two tracts covered by it. The concluding clause of the description of that tract says that it is "the same tract conveyed by S. C. Cornett and Mary Belle Cornett to L. D. Crawford, on the 1st day of February, 1912, by deed, etc." Throughout all his testimony relative to the negotiations that led up to the execution of the lease appellee, L. D. Crawford, used such expressions as to leave no doubt in our mind that the title of all the lands covered by the lease in question was in L. D. Crawford. All the royalty checks given by appellant to appellee in settlement for the coal actually mined under the lease were made payable to L. D. Crawford individually. Mrs. Dulcina Crawford took no part in the negotiations leading up to the making of the contract and was not present when it was reduced to writing and had no connection whatever with the matter, further than as the wife of appellee, L. D. Crawford, she was made a party to the lease and signed and acknowledged it. She did not testify in the case. The judgment as entered on the order books of the Perry circuit court was entered under the caption, "L. D. Crawford, plaintiff v. Daniel Boone Coal Company, defendant." In view of these facts, we conclude that we would not be authorized to dismiss the appeal because she was not made a party appellee.

Appellee contends that the record discloses that while this litigation was pending in the court below, appellant sold all of its assets, including the lease in question, to the Maynard Coal Company; that the Maynard Coal Company entered its appearance by joining with ap-

pellant in a demurrer filed to one of appellee's pleadings and thereby made itself a party to this action; that therefore the Maynard Coal Company is the real party in interest and should have prosecuted this appeal; that a decision of this appeal in favor of appellant, as it is no longer a party in interest, would be the decision of but a moot question, and that therefore the appeal should be dismissed. It does appear from the testimony that appellant, pending the litigation, sold its assets to the Maynard Coal Company and that the latter company joined with it in one of the demurrers filed herein. The record does not disclose, however, what the terms of the sale were, or when it occurred, or what the agreement between appellant and that company was with reference to the further prosecution of this litigation. The action was not abated as to appellant and the judgment was entered in favor of appellee, L. D. Crawford, and against appellant, Daniel Boone Coal Company. The only question to be determined by the judgment below from which this appeal has been prosecuted was the question as to whether or not the written coal lease evidenced the true contract with reference to the time when the minimum royalty of $2,500.00 a year would take effect, and whether or not there was such a showing of fraud or mistake in the execution of the contract as authorized its reformation. The chancellor, with reference to that question, adjudged as between appellant, Daniel Boone Coal Company, and appellee, L. D. Crawford, that the contract be reformed. That judgment has been appealed from by appellant, Daniel Boone Coal Company. It is manifest from the record herein that appellant is sufficiently interested to authorize it to prosecute the appeal.

For the foregoing reasons, the judgment of the chancellor adjudging a reformation of the lease mentioned in the petition, dated January 17, 1916, as between Daniel Boone Coal Company, appellant, and L. D. Crawford, appellee, is reversed and this cause remanded for further proceedings consistent herewith.