# Warfield Natural Gas Co. et al. v. Endicott.

(Decided Dec. 18, 1936.)

736

KIRK & WELLS and HAROLD A. RITZ for appellants.

J. B. CLARK and SAM MAYNARD for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On March 2, 1921, the appellee and plaintiff below, Sam Endicott and his wife, Vina Endicott, executed an oil and gas lease on one of the tracts or parcels of land owned by the husband in Martin county, Ky., to the United Fuel Gas Company, containing provisions usually found in such leases with reference to the privileges of the lessee, and providing for royalty payments in case of production and likewise for the payment of "delay rentals" for the period of nondevelopment, which was 12½ cents per acre quarterly, or 50 cents annually, and which was to cease upon development, or for one year after the boring of a dry well, but to reattach at the expiration of that year in the absence of further development. The description of the leased tract as contained in the lease is: "On the North by lands of W. J. Thompson. On the East by Lands of U. G. Pack. On the South by lands of Mich Justice heirs. On the West by lands of John Endicott." The lease was later assigned and transferred to the appellant and defendant below, Warfield Natural Gas Company, and no development had been made under it on April 12, 1930, when it was near its termination of ten years, but the delay rental for the entire time was punctually paid and received by plaintiff, the lessee. In obedience to the custom of plaintiff, it requested its superintendent, or other proper officer within that territory, to procure a renewal of the lease and sent him what is called in the record a "renewal slip." Pursuant thereto a renewal lease was taken to the present owner (defendant, Warfield Natural Gas Company), similar in every respect to the old lease, except it contained provisions for a reduction of the delay rental to correspond with the actual acreage covered by the lease should it be proven on a survey that it contained less acreage than 64 acres, the amount stated in both leases. That clause furthermore provided that any excess payments of delay rental grow-

ing out of a shortage of recited acreage over the correct amount should be applied to future rentals on the basis of the actual acreage. The delay rental provided for in the last lease was increased from 12½ cents per quarter to 25 cents, which, of course, doubled the amount stated in the first lease. Delay rental on the recited acreage was paid under the last lease up to the quarter ending December 2, 1932, which was two and one-half years from the date of the renewal lease.

In the meantime defendant had caused the lease to be surveyed, and it was found that it contained only 13.9 acres. The excess payments on the stated acreage of 64 acres contained in the lease that had been made for the two and one half years, amounted to $160 when the amount that was due under the terms of the lease, upon the actual number of 13.9 acres, amounted to only $34.90, making an excess payment of $125.20, which defendant insisted, after December 2, 1932, should be applied to future accruing delay rentals. But plaintiff disputed such right on the part of defendant and declined to consent thereto, which was followed by his filing this equity action in the Martin circuit court against defendant and its assignor, Virginia Gas & Oil Company (which was its original name, and therefore an unnecessary party). In his petition he alleged the execution of the lease and that defendants had ceased to pay delay rental, and that he had served notice on them to develop the lease which they had declined to do, and he therefore prayed for back delay rental from the time defendant ceased to pay it, or, if not entitled to it, then that defendants be compelled to develop the lease, or, upon failure to do so within a reasonable time, then that it be canceled. As a basis for his right to collect delay rentals on the recited acreage, he averred that the inserted clause in the last lease was made by fraud, oversight, or mistake, and that it should be reformed by expunging therefrom that clause.

Defensive pleadings averred the facts that we have related, but with more elaboration, and denied the material facts upon which plaintiff relied. After the making of the issues testimony by depositions was taken, and the cause submitted, and at the regular October term of the Martin circuit court on its ninth day, which was October 30, judgment was rendered sustaining plaintiff's contention by reforming the contract as contended

for by him, and directing that delay rentals should be paid by defendant upon the recited acreage in the lease and dismissed its prayer for an adjudication that it was obligated to pay delay rentals based only on actual acreage, which it had denominated in its pleadings as a "counterclaim." That judgment, as copied in this record, was duly signed by the judge. The regular term of the court was adjourned and the parties to this litigation went "hence away." Later the judge called a special term of the Martin circuit court to begin on December 9 of the same year, and on the first day of that (special) term he rendered another judgment in this case in favor of plaintiff for the balance due him for delay rentals on the basis of the recited acreage (64 acres) from the time defendant ceased to make such payments to the date of the rendering of the judgment, and which, as recited in the judgment, amounted to $192, but actually to $208—the amount as stated in the judgment being below that entitling defendant to appeal if the money judgment was the only thing involved in the case; whilst the actual amount of $208 would leave the way open by which defendant could seek and obtain a review in this court. But there was more than the unpaid contested rentals involved in the action, since the judgment had the effect to fix the status and obligation of the parties for all future time that the lease would remain in existence. Defendant was not present, nor, according to briefs (which is not denied in counter briefs) did it have any knowledge of the rendition of the last judgment at the speical term until after it had adjourned. However, it was recited therein that defendant objected and prayed an appeal to this court as was also done by it when the first judgment at the immediately preceding regular term was rendered. By this appeal it contests the correctness of both judgments, insisting, of course, that they were both erroneous and the last one also void, since the court had no authority to set aside the first judgment rendered at the regular October term of the court at the following special one held in December thereafter, and we have concluded that both contentions should be sustained. But, before addressing ourselves to the merits of the case, arising from the testimony heard at the trial and the recitations contained in the leases, we will first dispose of the question relating to the rendition of the last judgment at the special December term of the Martin court.

It appears in the record that the judge of the court, after rendering the first judgment of October 30, 1935— and so far as it is made to appear—after that term of the court had adjourned, wrote on the margin of the record these words: ''The judgment herein entered on October 30, 1935, was entered by mistake and oversight and not having been signed by the court or the judge thereof it is now set aside and held for nought''; also in the judgment that was rendered at the following special term of court it is recited: ''And the judgment entered in this case in Order Book 12 at page 273, is hereby set aside and held for naught.'' No motion was made at any time by any one for any such relief, or for otherwise altering or modifying the first judgment, nor was there any proceeding for that purpose ever inaugurated anywhere. On the contrary, the only fact furnishing a basis for the court setting that judgment aside, is the recitation in the marginal entry, referred to, that it had not been signed by the court and that it was rendered by mistake and oversight. But that recitation is in the face of the record brought to this court, which shows that the judgment was signed, either on the date it was rendered or before the adjournment of court, and it so appears upon the court records as brought to this court. Therefore, in the absence of some recognized procedure for the presentation of grounds upon which the court acted in setting it aside, it necessarily follows that the court's order in doing so, made after the expiration of the regular term (which also appears), was not only erroneous but void. But, after all, the question is really of but little, if any, material value, since the last judgment, conceding the right of the court to render it at the time it was done, was and is erroneous, because it fastened upon defendant the continued obligation to pay delay rentals upon the acreage recited in the lease instead of upon the correct acreage, contrary to the provisions of the lease above referred to—as well as contrary to defendant's rights even in the absence of such stipulation in the lease—and for which reason defendant had the right to appeal therefrom, although the money judgment rendered against it therein amounted only to $192.

It will be perceived that the delay rental was an annual payment of $1 per acre upon the recited acreage, and it was therefore a lease by the acre. The principle of law is too well established to require the citation of

cases to the effect that a vendee is entitled to recoup from the vendor any excess payment made for a shortage in the recited acreage, when the purchase is by the acre, regardless of the per cent. or amount of the shortage; but, when the lease or sale is "in gross," then the deficit must be as much as 10 per cent. before it may be recovered by the vendee. That principle is as applicable, as we conclude, for the benefit of a lessee as it is for the benefit of a vendee. In this case, if the lease had not been made by the acre but in gross, the shortage is far more than 10 per cent. of the recited acreage, and under the rule as stated defendant has the right to require plaintiff to account therefor. The only effect of the recitation in the lease giving that right is to have the overpayments credited on future accrued rentals, but which right he would doubtless possess without that stipulation.

Plaintiff seeks to avoid such consequences and to have a reformation of the lease, as the court decreed in its first judgment, upon the ground that the stipulation referred to in the last lease was inserted through mistake, oversight, or fraud, and to which he did not consent and seeks a reformation thereof by expunging that clause. Plaintiff testified that at the time the last lease was executed he had theretofore been in the hospital and was in poor health and that his eyesight was more or less impaired, although he could see enough to sign the lease. He also stated that he could read and write, but that he did not read the last lease before signing it; nor was it read to him by the agents of defendant who procured it (two of them) and who stated that it was a renewal of the old lease with a clause doubling the consideration. It turned out, however, that his confinement in the hospital was some six or more years prior to that occasion, and it was for some intestinal trouble and for nothing affecting his eyesight—though the latter ailment may have arisen since that time. But, however that may be, plaintiff's son was present at the time and he was then a high school student some fourteen or fifteen years of age, and it is not claimed that anything was the matter with his sight and plaintiff did not ask him to read the contract, nor does he say that any of defendant's agents misread it, or even read it at all. Plaintiff's testimony—which is but slightly, if at all, corroborated by any other witnesses—was extremely unsatisfactory and by no means convincing. On the other

hand, the witnesses for defendant testified in a most straightforward manner and clearly showed that plaintiff knew the contents of the renewel lease, and that they did not seek to or in any manner conceal from him any of its contents.

It is a universal rule—applied by this court in an unbroken line of opinions—that evidence necessary to and required for the reformation of a written contract must be clear and convincing, since the contract itself is supposed to contain in solemn form the agreement of the parties, and before the writing can be overthrown the grounds therefor should unmistakably appear from the testimony. Under title "Reformation of Instruments" in volume 16 of West's Kentucky Digest, a list of cases from this court, filling several columns, is made to the effect, as stated in Huntsman v. Monarch Oil & Gas Company, 197 Ky. 607, 247 S. W. 754, and Daniel Boone Coal Co. v. Crawford, 203 Ky. 666, 262 S. W. 1097, that "a written instrument cannot be reformed unless the evidence of mutual mistake is clear and convincing; a preponderance of the evidence is not sufficient." The key number citations contain a large number of cases preceding those two, as well as a long list following them. Upon the duty required of one signing a written instrument to ascertain its contents before he is permitted to eliminate from or alter a written contract the evidence in an action for reformation, the two recent cases of Southern Savings & Building Association v. Gray, 253 Ky. 429, 69 S. W. (2d) 738, 741, and Kentucky Road Oiling Co. v. Sharp, 257 Ky. 378, 78 S. W. (2d) 38, 42, are exactly in point. Many other prior domestic ones are cited in those opinions. Illustrative of the prevailing and applicable rule, we insert this excerpt from the Gray opinion, which was taken from the Supreme Court's opinion in the case of Upton v. Tribilcock, 91 U. S. 45, 23 L. Ed. 203: "It will not do for a man to enter into a contract, and, when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law. A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission."

In substantiation of the same proposition we, in the

Sharp opinion, quoted with approval this text from 6 R. C. L. 624, sec. 43: "The rule that one who signs a contract is presumed to know its contents has been applied even to contracts of illiterate persons on the ground that if such persons are unable to read, they are negligent if they fail to have the contract read to them. If a person cannot read the instrument, it is as much his duty to procure some reliable person to read and explain it to him, before he signs it, as it would be to read it before he signed it if he were able to do so, and his failure to obtain a reading and explanation of it is such gross negligence as will estop him from avoiding it on the ground that he was ignorant of its contents."

Such declarations of the correct rule have been followed and approved too long to be now questioned, even if there was a disposition to do so, but we are far from entertaining any such disposition, since written contracts would be of little value if such requirements should be abolished. Of course, there are situations where one of the parties to the contract has clearly been defrauded or imposed upon, and, when the facts are such as to establish that situation, the courts freely grant relief, but the burden is upon the party seeking such relief to make it clearly and convincingly apparent that he occupies the position to demand it. When so done he should obtain it, but when it is not so proven he should not obtain it. The evidence introduced upon this trial fails to measure up to the character of proof justifying or authorizing the reforming relief, and the court erred in reforming the present lease in the first judgment that it rendered.

The last judgment rendered at the special term of court was also not only erroneous, but void, since the first judgment had become final upon the adjournment of the regular term of the court at which it was rendered, and no procedure provided by the law was inaugurated to set it aside at the time the court did so. However, if it was not void, it is clearly erroneous, for the reasons stated and in not determining the issues made by the pleadings and the respective prayers for relief, and upon which the testimony was directed. Plaintiff was not entitled to require the drilling of an offset well under the provisions of section 3766b-4c, since the nearest producing one on adjoining premises was largely more than 200 feet distant. Neither was he

entitled to enforce development as long as the agreed delay rentals were paid, since such right is denied by sections 3766b-4 and 3766b-4a of our statutes, as well as by an express stipulation contained in the last lease.

Wherefore, for the reasons stated, both judgments are reversed, with directions to set them aside, and to dismiss plaintiff's petition.