## Christensen Bros. Co. v. Union Bank & Trust Co.

Oct. 12, 1943.

Raymond B. Dycus for appellant.

King & Flournoy and J. D. Ruark for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellant, Christensen Bros. Company, is a partnership composed of Christ Christensen, B. J. Winter and Celius Christensen, and is engaged in the business of constructing water and sewerage systems. The appellee, Union Bank & Trust Company, is successor to Peoples-Union County Bank & Trust Company. In 1928 Christensen Bros. Company entered into a contract with the city of Sturgis to construct a sewerage system and disposal plant for the city. The contract provided that the contractor should take at par and accrued interest the improvement bonds issued by the city after the completion of the work in the event a higher bid was not received when the bonds were offered for sale. On April 27, 1929, appellant and Peoples-Union County Bank & Trust Company entered into a contract whereby the bank agreed to finance the work. Appellant executed to the bank a note for $35,000, due 120 days after date. The proceeds of the note were to be deposited with the bank to the credit of Christensen Bros. Company as a special fund to be used for the payment of debts, amounting to $11,500, theretofore incurred under the contract with the city, and the balance to be used in completing the work under the contract. The contract with the bank provided that the cash paid to the city by property owners on their assessments for the sewerage improvements, and due Christensen Bros. Company under its contract with the city, should be paid to the bank, and also that any bonds issued by the city and purchased by Christensen Bros. Company should be turned over to the bank. The contract concluded as follows: "It is also agreed between the parties·hereto that all legal or court expenses in connection with the·preparation or enforcement of this contract or the carrying out of same or the collection of any moneys that may be due the said Christensen Brothers' Company from the City of Sturgis or any property owner thereof whose property may be assessed for the payment of said work or any part thereof, shall be borne and paid by said Christensen Brothers' Company and the Peoples-Union County Bank

& Trust Company shall be at no expense, of any kind or nature, in connection with this said contract other than is specifically mentioned and set up herein."

After the sewerage system was completed assessments were made against the property benefited by the improvement. Some of the property owners paid their assessments in cash, others elected to pay under the 10-year bond plan, and others failed to pay cash or to make any election. Appellant became the purchaser of the bonds, and these bonds together with the cash paid by the property owners were delivered to the bank. The city of Sturgis issued "certificates," which represented sums due by property owners who had neither elected to pay cash nor to pay under the 10-year bond plan. These certificates were also delivered to the bank. On January 15, 1930, a settlement was made between appellant and the bank, and appellant deposited with the bank $750 to indemnify it against expenses that might have to be incurred in the collection of monies from the city of Sturgis or from the property owners due on account of the sewer improvements. The agreement as to this deposit is evidenced by the following writing: "Whereas, on April 27th, 1929, the firm of Christensen Brothers Company and the Peoples-Union County Bank and Trust Company of Morganfield, Ky., entered into a contract for the financing of Christensen Brothers Company contract with the City of Sturgis, Kentucky, for sewer connection, and whereas, on this day a full settlement has been made between said parties with reference thereto, except that in the final clause of said contract Christensen Brothers Company agreed to idemnify the said Bank against legal and court expense that may have to be incurred in the collection of monies from the property owners or from the City of Sturgis due on account of said sewer improvements. Now to cover this possible expense and to indemnify the Bank against same, Christensen Brothers Company has left on deposit with the said Peoples-Union County Bank and Trust Company the sum of Seven Hundred and Fifty ($750.00) Dollars, with the understanding that any sum left so unexpended by the said Bank will be refunded to Christensen Brothers Company."

The bank thereafter paid to Christensen Bros. Company $250, leaving $500 in the deposit. On July 28, 1941, Christensen Bros. Company brought this suit to recover

the balance of the deposit. The bank in its answer set out the contracts and agreements heretofore referred to, and alleged that it had been compelled to bring suit to collect the bonds turned over to it by Christensen Bros. Company; that it had paid to its attorney the sum of $1,000, and to the circuit clerk the sum of $1,724.85 costs; and that the action was still pending. In a counterclaim it sought to recover the sum of $2,224.85. In an amended answer it alleged that on February 19, 1930, a suit was filed by the city against a number of owners of property benefited by the sewer system to enforce its lien against the property; that the bank had intervened in the action and had paid to its attorney in that action $165; that the action was still pending, and it was impossible to determine the total amount of court costs and attorneys' fees in the case. The suit was against property owners whose indebtedness was represented by the certificates issued by the city. A reply was filed, and upon motion of both parties the case was transferred to the equity docket. Both the plaintiff and the defendant moved the court to construe the contracts set out in the pleadings especially as to whether or not they purported to cover the court costs and expenses incurred in the collection of the certificates or the bonds set out in the pleadings. The court adjudged that the contracts covered the costs and expenses incurred by the defendant in the collection of both certificates and bonds. The plaintiff then amended its petition and alleged mutual mistake in the preparation and execution of the contract and asked for a reformation. It was alleged that it was not the intention of the parties at the time of the execution of the contract that it should cover the expense of enforcing the bonds, but that it was the intention of the parties that it should cover only the expenses of collecting the money represented by the certificates and it was asked that the contract be reformed and corrected by inserting the following words: "On certificates of indebtedness only and not on the bond issue or any part thereof." Proof was heard and on submission of the case the court refused to reform the contract and dismissed plaintiff's petition. It was also adjudged that the defendant recover nothing on its counterclaim, and the counterclaim was dismissed. The principal ground urged for reversal is that the trial court was in error in adjudging the contract broad enough to cover a defaulted bond issue.

Certificates are not mentioned in the contracts between appellant and appellee. When the first contract between appellant and appellee was executed the parties apparently contemplated that the debt to the bank would be satisfied out of the cash paid by the property owners and the bonds issued by the city which were secured by a lien on the property of owners who elected to pay on the 10-year plan. When the contract of January 15, 1930, was executed cash, certificates and bonds had been delivered to the bank, but that writing failed to refer to certificates and whether the contracts are read singly or together they cover bonds as well as certificates. It is just as reasonable to say that the contracts refer only to uncollected bonds as to say that they refer only to uncollected certificates. Both the bonds and the certificates represented debts owing by the property owners, and it was the purpose of the contracts to indemnify the bank against any necessary expense incurred by it in collecting these debts. Clearly the court's construction of the contracts was correct.

The testimony on the issue of mistake is conflicting. Mr. Christ Christensen testified that the $750 was deposited to guarantee that the city of Sturgis would collect the certificates, and that it was not until this suit was filed that he discovered that the bank was contending that the deposit covered a defaulted bond issue. He admitted that he and his attorney were present when the contract was prepared and executed and that they read it. Mr. A. G. Mason, vice president of the Union Bank & Trust Company, testified that it was his understanding the deposit was to cover any expense incurred by the bank in collecting the money due from the city and property owners, and that no terms of the agreement were omitted from the written contract.

No question of fraud, bad faith or inequitable conduct is involved. Appellant merely claims that the parties at the time of the execution of the contract intended to say one thing and by mutual mistake expressed another and different thing. In an action for reformation of a written contract the mistake alleged must be clearly established by satisfactory proof. The courts have employed varying expressions as to the degree or quality of proof which must be adduced, but all agree that there must be more than a mere preponderance of the evidence to warrant the reformation of a written contract.

One of the latest expressions on the subject by this court may be found in Warfield Natural Gas Company v. Endicott, 266 Ky. 735, 99 S. W. (2d) 822, 825, wherein it was said: "* * * a written instrument cannot be reformed unless the evidence of mutual mistake is clear and convincing; a preponderance of the evidence is not sufficient." The evidence in the present case failed to meet the requirements of the rule.

In paragraph 3 of its reply the plaintiff pleaded usury in the sum of $2,008.03. The defendant filed its motion to strike paragraph 3 from the reply, and it is now argued that the plaintiff was entitled to a judgment by default in the sum of $2,008.03 since the motion to strike the paragraph was not acted on by the court and there was no traverse of the plea. The following appears in the record: "Thereupon came the defendant, by its said Attorneys, and tendered its motion to strike Paragraph Three, from the plaintiff's reply to the defendant's Answer and Counterclaim, which said motion is now ordered filed by the Court, and said motion coming on for hearing and the Court being advised, it is ordered and adjudged that said motion be and the same is now sustained, and Paragraph Three of the plaintiff's reply to the Answer and Counterclaim of the defendant, is now stricken therefrom."

Paragraph 3 of the reply contained matter which, under the provisions of section 98 of the Civil Code of Practice, could only be pleaded in an amended petition, and the court's ruling was correct. Connecticut Fire Insurance Company of Hartford v. Baker, 287 Ky. 395, 153 S. W. (2d) 938.

The judgment is affirmed.